IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 CASES |
| | ) | |
| DIVERSE ENERGY SYSTEMS, LLC | ) | CASE NO. 15-34736 |
| | ) | |
| SCRIBNER INDUSTRIES, INC. | ) | CASE NO. 15-34737 |
| | ) | |
| DIVERSE ENERGY SYSTEMS, LLC | ) | CASE NO. 15-34738 |
| d/b/a LEAN TECHNOLOGIES, LLC | ) | |
| | ) | |
| ROULY, INC. | ) | CASE NO. 15-34739 |
| | ) | |
| Debtors. | ) | **Joint Administration Pending** |
| | ) | |
| | ) | **Emergency Hearing Requested** |
| | ) | |

## DEBTORS' EMERGENCY MOTION FOR THE ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE USE OF CASH COLLATERAL <u>AND GRANTING ADEQUATE PROTECTION</u>

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Diverse Energy Systems, LLC ("Diverse Holdings"), Scribner Industries, Inc. ("Scribner"), Diverse Energy Systems, LLC d/b/a Lean Technologies, LLC ("Diverse"), and Rouly, Inc. ("Rouly" and, collectively with Diverse Holdings, Scribner, and Diverse, the "Debtors"), as debtors and debtors in possession, file this Motion (the "Motion") pursuant to section 363 of the Bankruptcy Code and FED. R. BANKR. P. 4001(b), for entry of interim and final orders authorizing the use of cash collateral and granting adequate protection.  In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

**A.     Procedural Background**

2.     On September 7, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief in this Court under chapter 11 of the Bankruptcy Code.

3.     The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.     To date, no creditors' committee has been appointed in the Debtors' cases by the United States Trustee.  Further, no trustee or examiner has been requested or appointed in these chapter 11 cases.

**B.     The Debtors' Business**

**1.     Corporate Structure**

5.     Diverse Holdings was formed in November 2011 as a Texas limited liability

company.  Diverse Holdings acquired Diverse, a North Dakota company, in 2012 and is the sole owner and direct parent of Diverse.  Since Diverse Holdings' acquisition of Diverse, all of the Debtors' business, including subsequent acquisitions, has been conducted through Diverse, while Diverse Holdings has remained a holding company.  Diverse is the owner and direct parent of Scribner, which, in turn, is the owner and direct parent of Rouly.

6.      Diverse also directly owns Acquisitions Finance Group, Inc., which is the owner and direct parent of ITS Engineered Systems, Inc. ("ITS").[1]  Thus, Diverse is the indirect parent of ITS.

### 2.      Nature of the Debtors' Business

7.      Diverse is a provider of integrated solution platforms for upstream and midstream customers in the natural gas production, oil production, and water treatment industries.  Diverse manufactures new oil and gas field service equipment to be sold on a single unit basis or as a group.  Diverse also manufactures certain types of equipment, primarily artificial lift, power generation and vapor recovery units, to be used in its rental fleet.  Regardless of whether a customer chooses to lease or purchase the equipment, it is configured to appropriately accommodate the characteristics of the specific application it will service.  Additionally, Diverse offers support and maintenance service to its customers for both leased and owned equipment. Headquartered in Houston, Texas, Diverse has personnel and facilities in every major oil and gas basin and over 250,000 sq. ft. of production space with manufacturing facilities in Hobbs, New Mexico, Katy and Odessa, Texas, and Grafton, North Dakota.

8.      At the close of 2012, Diverse acquired Scribner and Rouly, which provided it with a 5,000 square foot manufacturing facility and office in Odessa, Texas, and a 10,000 square foot manufacturing facility in Hobbs, New Mexico, to support the Debtors' operations in the Permian Basin.

---

[1] In addition to ITS, Acquisitions Finance Group, Inc. also owns an entity called ITS Water Solutions, Inc.

9.      In order to build an infrastructure capable of supporting substantial continued revenue growth, Diverse made significant investments in SG&A and facilities in 2012, 2013 and 2014. As the Company was poised to take advantage of an increase in revenue related to the boom in U.S. fracking, the industry slowed as the price of oil plummeted, leaving Diverse with an inflated cost structure for the current revenue level. As a result, the Debtor's management has been forced to make difficult but necessary adjustments to rightsize the Company, reducing personnel and employee benefits, in order to conserve cash.

**C.      Relationship between Diverse and ITS Engineered Systems, Inc.**

10.     As noted above, Diverse is the indirect parent ITS.  ITS filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on April 17, 2015.  ITS's bankruptcy case is currently pending in this Court as Case No. 15-32145 (KKB).

11.     Pursuant to the terms of a certain Promissory Note dated September 1, 2013, Diverse loaned ITS up to the sum of $3,000,000.00 on a revolving basis.  In conjunction with such borrowing, ITS executed a certain Security Agreement dated September 1, 2013, granting Diverse a security interest in substantially all of ITS's assets. Diverse filed a UCC financing statement with the Texas Secretary of State on September 12, 2013 (collectively the "Diverse Credit Facility").  As of the petition date in ITS's bankruptcy case, the amount owing under the Diverse Credit Facility was approximately $1,365,404.57.

12.     On May 22, 2015, the Court entered its *Final Order (I) Authorizing Use of Cash Collateral and Grant of Adequate Protection, and (II) Authorizing Post-Petition Financing* (the "ITS DIP Financing Order")[2] in the ITS bankruptcy case.  In accordance with the ITS DIP Financing Order, Diverse has provided ITS debtor-in-possession financing to enable ITS to pay operating expenses and other administrative expenses of ITS's bankruptcy estate.  As described in the *Debtors' Emergency Motion for Entry of Interim and Final Orders Authorizing the Debtors to (I)*

---

[2] *See* ITS Docket No. 60.

*Continue Using Their Cash Management System, (II) Maintain Their Existing Bank Accounts and Business Forms, (III) Continue Transactions with ITS Engineered Systems, Inc., and (IV) Granting Related Relief* (the "Cash Management Motion") filed concurrently herewith, the Debtors seek to continue their existing cash management system, which would include continuing to provide financing to ITS pursuant to the ITS DIP Financing Order on a post-petition basis.

**D.    Alerus's Indebtedness**

13.    Diverse's primary prepetition secured lender is Alerus Financial, N.A. ("Alerus"). Diverse has the following loans with Alerus: (i) a $10,000,000 revolving line of credit (Loan A); (ii) a $1.25 million equipment term loan (Loan B); (iii) a $1.5 million Phase II equipment acquisition loan (Loan C); (iv) a $2.1 million construction loan (Loan D); (v) a $500,000 property term note for a field services center in Berthold, North Dakota (Loan E); and (vi) a $600,000 construction loan for fabrication shop in Grafton, North Dakota (Loan F).  The Alerus loans are generally secured by Diverse's land and any improvements thereon in North Dakota, including its manufacturing facility in Grafton, field services property in Berthold, and fabrication shop in Grafton, as well as by Diverse's rents and profits, inventory, accounts, deposit accounts, general intangibles, and equipment (the "Prepetition Collateral").[3]

14.    Because Alerus's Prepetition Collateral includes accounts and deposit accounts, Alerus likely asserts a security interest in certain of the Debtors' cash and cash equivalents on hand as of the Petition Date and to be received post-petition as proceeds of the Prepetition Collateral (the "Cash Collateral").

**RELIEF REQUESTED**

15.    By this Motion, the Debtors seek interim and final orders authorizing the use of Cash Collateral pursuant to section 363(c) of the Bankruptcy Code.  The Debtors request authority

---

[3] Nothing herein shall be construed as an admission or waiver by the Debtors as to the amount of Alerus's prepetition claim or the validity, priority, or extent of Alerus's asserted liens on the Debtors' assets.  The Debtors reserve all rights with respect to these issues.

to use Cash Collateral in accordance with the Budget attached hereto as **Exhibit "A"** (the "Budget") on an interim basis, and in accordance with subsequent budgets hereafter approved by the Court on a final basis.

16.     In addition, under sections 361 and 363(e) of the Bankruptcy Code, the Debtors seek to grant adequate protection to Alerus for any diminution of the value of the Prepetition Collateral (as defined below) as a result of the use of Cash Collateral through the issuance of a replacement lien in favor of Alerus on Cash Collateral generated post-petition.

17.     The relief requested herein is necessary to prevent immediate and irreparable harm to the Debtors' chapter 11 estates and permit the Debtors to continue to operate their businesses and to satisfy their direct operating expenses and other administrative expenses of their estates.  The Debtors request approval for interim use of Cash Collateral through October 11, 2015, on an interim basis (the "Interim Order") and thereafter on a permanent basis (the "Final Order").

18.     The Debtors assert that the interests of the Alerus in the Prepetition Collateral are adequately protected.  Moreover, to the extent of any diminution in value in Alerus's Cash Collateral occasioned by the Debtors' use of such Cash Collateral, the Debtors propose to grant Alerus replacement liens in cash generated post-petition to ensure that Alerus's interests are adequately protected.  Further, the Debtors' continued use of the Prepetition Collateral maximizes the position of all of the Debtors' creditors, including Alerus.  Without the use of the Cash Collateral, the Debtors would be unable to pay their operating expenses, which, in turn, would force them to cease operating.  The Debtors businesses and their assets, including the Prepetition Collateral, are far more valuable as a going concern than they would be if the Debtors were forced to cease operations.  Moreover, the Debtors' ongoing operations benefit Alerus in that new Cash Collateral is created.

19.     At the present time, an immediate and critical need exists for the Debtors to be permitted access to funds in order to continue their business operations, to pay their operating

expenses, and to protect the going concern value of their businesses.

20.    Pursuant to section 363(c)(2)(B) of the Bankruptcy Code, the Debtors request that the Court authorize and approve the Debtors' use of Cash Collateral for the payment of their expenses in accordance with the Budget and with subsequently approved budgets.  To remain in possession of their property, to continue their business activity, and to preserve their going concern value, the Debtors request use of Cash Collateral in the Debtors' ordinary business operations. The Debtors believe that payment of operating expenses is reasonable and that such payment is for necessary business expenses which must be paid in order to continue the Debtors' business operations.

21.    In the event the Court does not authorize the Debtors' proposed use of Cash Collateral, the Debtors believe that the Debtors will be seriously and irreparably harmed, resulting in significant losses to the Debtors' estates and their creditors.

22.    In filing this Motion, the Debtors do not admit that Alerus holds valid, perfected, enforceable or unavoidable prepetition liens and security interest in and to any of the Prepetition Collateral.  The Debtors do not waive the right to contest the validity, perfection, enforceability, or avoidability of Alerus's liens and security interests in and to the Prepetition Collateral.

## APPLICABLE AUTHORITY

23.    One of the Debtors' most pressing concerns is the need for immediate use of Cash Collateral pending a final hearing on this Motion.  Rule 4001(b) and (c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provide that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion.  *See* FED. R. BANKR. P. 4001(b) and (c); 11 U.S.C. § 363.  Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the restricted use of cash collateral to the extent necessary to avoid immediate and irreparable damage to the debtor's estate.  The Debtors require

use of Cash Collateral to pay present operating expenses and other administrative expenses of the Debtors' estates.

24.     The Debtors request immediate authority to use the Cash Collateral to fund the Debtors' day-to-day operations in accordance with the Budget.  Absent such relief, the Debtors will not be able to continue to operate their business.  In sum, failure to obtain authorization for the use of the Cash Collateral will be disastrous to the Debtors and their creditors.  Entry of an order authorizing the use of Cash Collateral will minimize disruption to the Debtors' business and operations and permit the Debtors continue operations.  Absent use of the Cash Collateral, the Debtors' estates would not have sufficient funds to satisfy their ongoing business obligations.  Allowing use of Cash Collateral, therefore, is in the best interest of the Debtors' estates.

25.     The use of Cash Collateral and the adequate protection proposed herein is fair and reasonable under the circumstances, reflects the Debtors' exercise of prudent business judgment, and is supported by reasonably equivalent value and fair consideration.  Also, the adequate protection proposed herein in the form of replacement liens, in addition to its existing liens in the Prepetition Collateral, is sufficient to protect the interests of Alerus.  As such, the Debtors should be afforded protections equivalent to those provided in section 364(e) of the Bankruptcy Code.

26.     The relief requested herein should ensure that the Debtors' chapter 11 estates have sufficient resources to commence their chapter 11 case and to provide a seamless transition to operating their business as debtors-in-possession.  The Debtors request that the Court grant the Motion.

**NOTICE**

27.     Notice of this Motion has been provided to (i) the office of the United States Trustee for the Southern District of Texas, (ii) the holders of the twenty (20) largest unsecured claims against the Debtors, (iii) Alerus, and (iv) all other parties requesting notice in these chapter 11 cases.  The Debtors respectfully submit that no other or further notice need be provided.

## EMERGENCY HEARING REQUESTED

28.    The Debtors have an immediate need for the relief requested in this Motion. Accordingly, the Debtors request that the Court conduct an emergency interim hearing on the Motion at the earliest date available on its docket and, following such emergency hearing, enter an interim order granting the Motion.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court (i) grant the Motion; (ii) enter an Interim Order permitting the Debtors to use Cash Collateral consistent with the Budget; (iii) after a final hearing on this Motion, enter a Final Order permitting the Debtors to use Cash Collateral on a final basis as provided herein; (iv) grant Alerus replacement liens in the Cash Collateral as provided herein; and (v) grant all such other and further relief as is just and proper.

Dated: September 7, 2015

Respectfully submitted,

/s/ J. Robert Forshey
J. Robert Forshey
State Bar No. 07264200
Suzanne K. Rosen
State Bar No. 00798518
Clarke V. Rogers
State Bar No. 24052901
FORSHEY & PROSTOK, L.L.P.
777 Main Street, Suite 1290
Fort Worth, Texas 76102
Phone: (817) 877-8855
Fax: (817) 877-4151
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
crogers@forsheyprostok.com

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon the parties listed on the attached service list via United States Mail, first class postage prepaid, on September 8, 2015 and via ECF electronic Notice, if available, on September 7, 2015.

/s/ J. Robert Forshey _____

J. Robert Forshey

## CERTIFICATE OF ACCURACY

The undersigned hereby certifies that the facts contained in the foregoing Motion are true and correct to the best of his knowledge.

/s/ Todd A. Hass _____

Todd A. Hass
Authorized Representative of the Debtors

## CERTIFICATE OF CONFERENCE

Both counsel and the financial professionals for the Debtors have been in frequent communication for a number of weeks, including calls on September 4 and 7, 2015. A draft of this Motion, the proposed order and the proposed cash collateral budget have been forwarded to counsel for Alerus at approximately 2:00 p.m. on September 7, 2015. Debtor is awaiting the final response from Alerus' counsel to the proposed documents and budget.

/s/ J. Robert Forshey _____

J. Robert Forshey

L:\BFORSHEY\Diverse Energy Systems, LLC #5759\Pleadings\Cash Collateral Motion (9.4.15).docx

# EXHIBIT "A"

Diverse

| Description | 9/7/2015 | 9/14/2015 | 9/21/2015 | 9/28/2015 |
|---|---|---|---|---|
| | | | | |
| **Beginning Cash** | **414,917** | **388,447** | **449,948** | **120,382** |
| | | | | |
| **Diverse DIP Loan** | | | | |
| | | | | |
| **ITS DIP Loan (advance) payment** | **(59,116)** | **35,311** | **(46,998)** | **10,627** |
| | | | | |
| **Inflow:** | | | | |
| AR Collections - Current | 311,811 | 311,811 | 311,811 | 311,811 |
| AR Collections - New | - | - | - | - |
| Capital Contributions | - | - | - | - |
| Bariven / PDVSA | - | - | - | - |
| Sales Tax | - | - | - | - |
| | | | | |
| **Total Inflows** | **311,811** | **311,811** | **311,811** | **311,811** |
| | | | | |
| **Outflow:** | | | | |
| Payroll - Direct & Shop OH | - | - | 63,139 | - |
| Payroll - SG&A | - | - | 216,308 | - |
| 401k \ Health Savings | 6,000 | - | 9,600 | 6,000 |
| | | | | |
| Materials to Purchase (current orders) | 78,760 | 78,760 | 78,760 | 78,760 |
| Materials to Purchase (new orders) | - | - | - | - |
| Bariven \ PDVSA | - | - | - | - |
| ITS to Diverse charge \ DIP advance | 150,000 | 150,000 | 150,000 | 150,000 |
| | | | | |
| Rents | - | - | 4,741 | 19,500 |
| Recurring Pymts | - | - | 41,424 | 12,980 |
| Utilities | 3,495 | 610 | 6,157 | 22,070 |
| Legal \ Professional fees | 12,000 | 37,000 | 5,000 | 30,000 |
| US Trustee Fees | - | - | - | - |
| General Expenses (i.e. shop expenses) | 18,691 | 19,251 | 19,251 | 18,691 |
| | | | | |
| **Adequate Protection Payments** | **10,219** | **-** | **-** | **-** |
| Insurance (Health and Life) | - | - | - | 84,080 |
| | | | | |
| **Total Outflows** | 279,166 | 285,621 | 594,380 | 422,082 |
| | | | | |
| **Ending Cash** | 388,447 | 449,948 | 120,382 | 20,738 |
| | | | | |
| **Total Consolidated Cash** | 388,447 | 449,948 | 120,382 | 20,738 |
| | | | | |
| Difference | - | - | - | 0 |

ITS

| Description | 9/7/2015 | 9/14/2015 | 9/21/2015 | 9/28/2015 |
|---|---|---|---|---|
| **Inflow:** | | | | |
| **Revenue from Diverse \ DIP advance** | 150,000 | 150,000 | 150,000 | 150,000 |
| | | | | |
| | | | | |
| **Outflow:** | | | | |
| Payroll - Direct & Shop OH | 112,308 | - | 101,100 | - |
| Payroll - SG&A | 13,009 | - | 13,009 | - |
| **401k** | 3,400 | - | 3,400 | - |
| | | | | |
| **\*\* Rents** | - | - | - | - |
| **Recurring Payments** | - | - | - | - |
| **Utilities** | 350 | 10,200 | - | - |
| **Materials in Manufacturing** | 66,240 | 66,240 | 66,240 | 66,240 |
| **Shop Overhead expenses** | 3,249 | 3,249 | 3,249 | 3,249 |
| | | | | |
| **Legal and Professional Fees** | 10,000 | 35,000 | 10,000 | 25,000 |
| **Bank Fees** | 560 | | | 560 |
| **U.S. Trustee Fees** | - | - | - | - |
| | | | | |
| **Diverse Management Fee** | | | | - |
| | | | | |
| **Insurance (Property, Umbrella, Health and** | - | - | - | 44,324 |
| | | | | |
| **Total Outflows** | 209,116 | 114,689 | 196,998 | 139,373 |
| | | | | |
| **Net Cash Flows** | (59,116) | 35,311 | (46,998) | 10,627 |

Diverse has a DIP loan facility to ITS and which has been previously approved by the Bankruptcy Court as a part of the ITS bankruptcy case.  ITS will continue to manufacture goods for Diverse but, in order to do so, ITS will require additional advances on the DIP loan from Diverse to fund overhead and manufacturing costs.

The DIP loan is administered between ITS and Diverse as follows:

1.  Diverse contracts with ITS to fabricate goods for a price equal to ITS' cost plus 10%;

2.  Diverse then makes cash advances against the DIP facility to ITS to fund its expenses;

3.  ITS charges Diverse for the cost of the constructing the goods in accordance with the contract, *i.e.* 110% of cost; and

4.  Diverse then satisfies ITS' charges for fabricating the goods by offsetting ITS' charges against the outstanding balance of the DIP loan.

The cash collateral budget reflects this arrangement in terms of cash changing hands. The amounts projected to be advanced by Diverse to ITS are reflected in "Inflow" line of the ITS sheet as "Revenue from Diverse/DIP Loan Advance".  Because no cash changes hands when ITS is "paid" by Diverse for the goods so manufactured through a credit against the outstanding balance of the DIP loan, that transaction does not appear on this cash budget.  What appears on the Diverse portion of the cash budget is the collection of the accounts receivable by Diverse as Diverse's customers pay for the goods which were fabricated by ITS and sold by ITS to Diverse.

**Consolidated**

| Description | 9/7/2015 | 9/14/2015 | 9/21/2015 | 9/28/2015 |
|---|---|---|---|---|
| | | | | |
| | | | | |
| **Beginning Cash** | 414,917 | 388,447 | 449,948 | 120,382 |
| | | | | |
| **DIP Loan** | - | - | - | - |
| | | | | |
| **Inflow:** | | | | |
| AR Collections - Current | 311,811 | 311,811 | 311,811 | 311,811 |
| AR Collections - New \ Misc | | | | |
| Capital Contributions | | | | |
| Bariven / PDVSA | | | | |
| Sales Tax | | | | |
| | | | | |
| **Total Inflows** | 311,811 | 311,811 | 311,811 | 311,811 |
| | | | | |
| **Outflow:** | | | | |
| Payroll - Direct & Shop OH | 112,308 | - | 164,239 | - |
| Payroll - SG&A | 13,009 | - | 229,317 | - |
| 401k \ Health Savings | 9,400 | - | 13,000 | 6,000 |
| | | | | |
| Materials to Purchase (current orders) | 145,000 | 145,000 | 145,000 | 145,000 |
| Materials to Purchase (new orders) | | | | |
| Bariven \ PDVSA | | | | |
| | | | | |
| Rents | - | - | 4,741 | 19,500 |
| Recurring Pymts | - | - | 41,424 | 12,980 |
| Utilities | 3,845 | 10,810 | 6,157 | 22,070 |
| Legal \ Professional fees | 22,000 | 72,000 | 15,000 | 55,000 |
| US Trustee | - | - | - | - |
| | | | | |
| General Expenses (i.e. shop expenses) | 22,500 | 22,500 | 22,500 | 22,500 |
| | | | | |
| **Adequate Protection Payments** | 10,219 | - | - | - |
| | | | | |
| **Insurance (Property, Umbrella, Health and Life, et** | - | - | - | 128,404 |
| | | | | |
| **Total Outflows** | 338,281 | 250,310 | 641,378 | 411,455 |
| | | | | |
| **Ending Cash** | 388,447 | 449,948 | 120,382 | 20,738 |
| | | | | |
| New Orders | - | - | - | - |
| Bariven \ PDVSA | - | - | - | - |
| New Orders - Bariven \ PDVDA cumulative | - | - | - | - |
| | | | | |
| Adjusted Ending Cash | 388,447 | 449,948 | 120,382 | 20,738 |

# SERVICE LIST

**Service List**
**Diverse Energy Systems, et al.**
**#5759**

Diverse Energy Systems, LLC, et al.
Attn: Todd A. Hass, CFO
1301 McKinney, Suite 3300
Houston, TX 77010

Office of the U.S. Trustee
515 Rusk Ave., Suite 3516
Houston, TX 77002

IRS – U.S. Treasury
PO Box 7346
Philadelphia, PA 19101

National Oilwell Varco, L.P., - Mfg.
10000 Richmond Avenue, Suite 100
Houston, TX 77042

Howard Operating – HEP
17806 IH-10 West, Suite 210
San Antonio, TX 78257

Greatwide Dallas Mavis, LLC
PO Box 405828
Atlanta, GA 30384-5828

Mustang CAT Power Systems
12800 Northwest Freeway
Houston, TX 77040

**Jim Anderson**
**272 Edennold Dr. NW**
**Calgary, Alberta T3A4A4**
**CANADA**

Ratner Steel Supply Company
MI14
P.O. Box 9201
Minneapolis, MN 55480-9201

Murphy Industries
Dept. 96-0494
Oklahoma City, OK 73196-0494

United Holdings LLC
dba Buck's Engines
PO Box 731595
Dallas, TX 75373-1595

CGSI
PO Box 941417
Houston, TX 77094

Pannell Kerr Forster
5847 San Felipe, Suite 2400
Houston, TX 77057-3092

StrongFab Solutions, Inc.
P.O. Box 41266
Houston, TX 77241

FMC Technologies Measurement Solutions,
Inc.
14121 Collections Center Drive
Chicago, IL 60693

Knighten Machine & Service, Inc.
dba Knighten Industries
3323 N. County Rd. W.
Odessa, TX 79764

Twin Stars Compression, LLC
100 Iowa
Bloomfield, NM 87413

Ventech Process Equipment, Inc.
PO Box 4261
Pasadena, TX 77502

Erwin Caraballo
6020 NW 99th Ave., Suite 308
Doral, FL 33178

Texas Industrial Engine Parts, Inc.
PO Box 590
George West, TX 78022

World Wide Electric Corp.
3540 Winton Place
Rochester, NY 14623

Houston Global Heat Transfer
14446 Smith Rd.
Humble, TX 77396

**George Fort**
**Ave. 3G No 71-37**
**Maracaibo, Venezuela**

Industrial Piping Specialists Inc.
P.O. Box 581270
Tulsa, OK 74158

Command Center, Inc.
P.O. Box 951753
Dallas, TX 75395-1753

Westair-Praxair Distribution
dba West Air Gas & Equipment
PO Box 1339
Abilene, TX 79604

Blackmer, Divison of Dover Energy
1809 Century SW
Grand Rapids, WI 49503

Robert D. Duncan
dba DK Trucking
PO Box 13378
Odessa, TX 79768

General Steel Warehouse, Inc.
P.O. Box 2037
Lubbock, TX 79408

Angus Measurement Systems, LP
PO Box 14440
Odessa, TX 79768

Elliott Electric Supply Inc.
PO Box 630610
Nacogdoches, TX 75963

Quail Energy Services, LP
PO Box 777
Andrews, TX 79714

Anton Friske
78 Shiloh Rd.
Odessa, TX 79762

Custom Fiberglass Inc.
PO Box 70
Mills, WY 82644

Precision Welding and Machine, LLC
PO Box 61710
Midland, TX 79711-1710

Valley Industrial X-Ray & Inspection Service, Inc.
APPLUS RTD – VIXR Lockbox
25636 Network Place
Chicago, IL 60673-1256

Enterprise Fleet Management Inc.
PO Box 800089
Kansas City, MO 64180-0089

Mario A. Castro
dba Ace Sheetmetal Production
3237 S. Einstein Ave.
Odessa, TX 79766

Duncan Co.
425 Hoover Street NE
Minneapolis, MN 55413

Hughes Oilfield Transportation, Inc.
2513 N Mercury Ave.
Odessa, TX 79763-1922

Grainger
4110 S County Road 1276
Midland, TX 79706

Ameripride Linen
P.O. Box 3160
Bemidji, MN 56619-3160

Permian Machinery Movers, Inc.
P.O. Box 11281
Odessa, TX 79760-8281

Alerus Financial - Alerus Acct
P.O. Box 6001
Grand Forks, ND 58206

Integral Equipment Leasing, LLC
1301 McKinney, Suite 3300
Houston, TX 77010

Nations Equipment Finance
501 Merritt Seven, 6th Floor
Norwalk, CT 06851

Fountain Partners
50 California St., Suite 3330
San Francisco, CA 94111

City of Grafton
Municipal Utilities
P.O. Box 578
Grafton, ND 58237

Ally
P.O. Box 9001948
Louisville, KY 40290-1948

Liberty Power Holdings, LLC
25901 Network Place
Chicago, IL 60673

City of Odessa
411 West 8th St.
Odessa, TX 79760

AT&T
PO Box 5001
Carol Stream, IL 60197

AT&T Mobility
PO Box 6463
Carol Stream, IL 60197

Direct TV
PO box 78626
Phoenix, AZ 85062

Waste Management
PO Box 4648
Carol Stream, IL 60197

De Lage Landen Financial Services, Inc.
PO Box 41602
Philadelphia, PA 19101-1602

Midcontinent Communications
PO Box 5010
Sioux Falls, SD 57117

SRT Communications
P.O. Box 2027
Minot, ND 58702-2027

TW Telecom
PO box 172567
Denver, CO 80217

Municipal Utilities
PO Box 578
Grafton, ND 58237

CenturyLink
PO Box 91154
Seattle, WA 98111

Polar Communications
P.O. Box 270
Park River, ND 58270

Montana Dakota Utilities Co.
PO Box 5600
Bismarck, ND 58506-5600

Verendrye Electric Cooperative
615 Hwy 52 West
Velva, ND 58790

Comcast Corporation
One Comcast Center, 32nd Floor
Philadelphia, PA 19103

Refuse Disposal Service
1463 Detweiler Dr.
Grafton, ND 58237-2603

The Aldridge Company
P.O. Box 56506
Houston, TX 77256