**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 CASES |
| | ) | |
| DIVERSE ENERGY SYSTEMS, LLC | ) | CASE NO. 15-34736 |
| | ) | |
| SCRIBNER INDUSTRIES, INC. | ) | CASE NO. 15-34737 |
| | ) | |
| DIVERSE ENERGY SYSTEMS, LLC | ) | CASE NO. 15-34738 |
| d/b/a LEAN TECHNOLOGIES, LLC | ) | |
| | ) | |
| ROULY, INC. | ) | CASE NO. 15-34739 |
| | ) | |
| Debtors. | ) | **Joint Administration Pending** |
| | ) | |
| | ) | **Emergency Hearing Requested** |
| | ) | |

**DEBTORS' EMERGENCY APPLICATION FOR THE ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE EMPLOYMENT AND RETENTION OF JOHN BOYLAN AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS AS OF SETEMBER 8, 2015**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Diverse Energy Systems, LLC ("Diverse Holdings"), Scribner Industries, Inc. ("Scribner"), Diverse Energy Systems, LLC d/b/a Lean Technologies, LLC ("Diverse"), and Rouly, Inc. ("Rouly" and, collectively with Diverse Holdings, Scribner, and Diverse, the "Debtors") as debtors and debtors in possession, file this emergency application (the "Application") pursuant to sections 327 and 328 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure for the entry of interim and final orders authorizing the employment and retention of John Boylan ("Boylan") as the Chief Restructuring Officer ("CRO") for the Debtors as of the Petition Date.  In support of this Application, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

**A.      Procedural Background**

2.      On September 7, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief in this Court under chapter 11 of the Bankruptcy Code.

3.      The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.      To date, no creditors' committee has been appointed in the Debtors' cases by the United States Trustee.  Further, no trustee or examiner has been requested or appointed in these chapter 11 cases.

**B.      The Debtors' Business**

### 1. Corporate Structure

5.     Diverse Holdings was formed in November 2011 as a Texas limited liability company.  Diverse Holdings acquired Diverse, a North Dakota company, in 2012 and is the sole owner and direct parent of Diverse.  Since Diverse Holdings' acquisition of Diverse, all of the Debtors' business, including subsequent acquisitions, has been conducted through Diverse, while Diverse Holdings has remained a holding company.  Diverse is the sole owner and direct parent of Scribner, which, in turn, is the sole owner and direct parent of Rouly.

6.     In addition to Scribner, Diverse also directly owns Acquisitions Finance Group, Inc., which is the sole owner and direct parent of ITS Engineered Systems, Inc. ("ITS").[1]  Thus, Diverse is the indirect parent of ITS.

### 2. Nature of the Debtors' Business

7.     Diverse is a provider of integrated solution platforms for upstream and midstream customers in the natural gas production, oil production, and water treatment industries.  Diverse manufactures new oil and gas field service equipment to be sold on a single unit basis or as a group.   Diverse also manufactures certain types of equipment, primarily artificial lift, power generation and vapor recovery units, to be used in its rental fleet.  Regardless of whether a customer chooses to lease or purchase the equipment, it is configured to appropriately accommodate the characteristics of the specific application it will service.  Additionally, Diverse offers support and maintenance service to its customers for both leased and owned equipment.  Headquartered in Houston, Texas, Diverse has personnel and facilities in every major oil and gas basin and over 250,000 sq. ft. of production space with manufacturing facilities in Hobbs, New Mexico, Katy and Odessa, Texas, and Grafton, North Dakota.

8.     At the close of 2012, Diverse acquired Scribner and Rouly, which provided it with a 5,000 square foot manufacturing facility and office in Odessa, Texas, and a 10,000 square

---

[1] In addition to ITS, Acquisitions Finance Group, Inc. also owns an entity called ITS Water Solutions, Inc.

foot manufacturing facility in Hobbs, New Mexico, to support Debtors' operations in the Permian Basin.

9.      In order to build an infrastructure capable of supporting substantial continued revenue growth, Diverse made significant investments in SG&A and facilities in 2012, 2013 and 2014. As the Company was poised to take advantage of an increase in revenue related to the boom in U.S. fracking, the industry slowed as the price of oil plummeted, leaving Diverse with an inflated cost structure for the current revenue level. As a result, the Debtor's management has been forced to make difficult but necessary adjustments to rightsize the Company, reducing personnel and employee benefits, in order to conserve cash.

## RETENTION OF BOYLAN AS CRO

10.      By this Application, the Debtors seek Court approval to employ and retain Boylan as CRO for the Debtors as of September 8, 2015.  Boylan is a licensed CPA who has a great deal of experience providing financial and management consulting to both public and private clients in the oil and gas exploration and production industry.  The Declaration of John Boylan (the "Boylan Declaration") is attached hereto as **Exhibit "A"** and incorporated herein by reference.  Boylan meets the requirements for the retention of professionals set forth in 11 U.S.C. §§ 327, 328, and 329 and in Bankruptcy Rules 2014 and 2016(b).

## REASONS FOR SELECTION OF BOYLAN

11.      Boylan is highly qualified to serve as the Debtors' CRO.  A copy Boylan's résumé is attached hereto as **Exhibit "B."**  As noted above, Boylan is a licensed CPA and has a great deal of experience providing financial and management consulting to both public and private clients in the oil and gas exploration and production industry.  He has experience in executive management, asset management, corporate finance, complex financial reporting, and risk management.

12.      Immediately prior to the Petition Date, on or about September 2, 2015, the Debtors entered into a Consulting Agreement (the "Consulting Agreement") with Boylan's firm,

EJC Ventures, LP ("EJC"), which required Boylan and EJC to provide the following services: (i) assist and advise in evaluating cost savings opportunities for the Debtors, (ii) advise in preparing bankruptcy schedules and weekly reporting required during reorganization process; (iii) assist and advise in preparing for, evaluating, proposing, negotiation and executing a plan of reorganization on behalf of the Debtors; (iv) assist and advise in preparing for, negotiating, and executing amendments to existing credit facilities; and (v) assist and advise in strategic transactions (including refinancing, restructuring, raising debt or equity capital, liquidation, bankruptcy, a sale of some or all of the Debtors' assets, merger, acquisition, or similar transaction involving a fundamental change in the ownership or financing of the Debtors). Since September 2, 2015, Boylan has become familiar with the Debtors, their affiliates, and their respective business operations.

## SCOPE OF SERVICES

13.     As set forth in the engagement letter attached hereto as **Exhibit "C"** (the "Engagement Letter"), the Debtors contemplate that Boylan shall serve as the Debtors' CRO and oversee the daily operation of the Debtors' business, assist in the preparation of a plan of reorganization, negotiate with third party lenders regarding exit financing and/or analyze and assist in a section 363 sale of the Debtors' assets (and oversee all aspects thereof). In this capacity, Boylan shall have the authorization, *inter alia*: (a) to open and close bank accounts for the Debtors (consistent with United Trustee guidelines and requirements for debtor-in-possession bank accounts), (b) to transfer funds of the Debtors, (c) to cause the Debtors to enter into any agreement or contract that is reasonably necessary to the completion of a section 363 sale; (d) to cause the Debtors to comply with all Guidelines of the Office of the United States Trustee; (e) to cause the Debtors to pursue, settle or compromise any litigation, controversy or other dispute involving the Debtors, (f) to make employment related decisions following consultation with the Debtors' counsel; (g) to cause the Debtors to exercise the Debtors' rights under the Debtors' agreements and other agreements in favor of the Debtors; (h)

to negotiate and enter into agreements with potential debtor-in-possession lenders; (i) to complete a section 363 sale of the Debtors' assets; (j) to cause the Debtors to prepare one or more plans of reorganization, or to take any and all action in the Debtors' bankruptcy cases; and (k) all such other acts as may be reasonably necessary and appropriate to the management or operation of the Debtors or their bankruptcy estate.

## PROPOSED COMPENSATION

14.     Subject to the Court's approval, Boylan will charge the Debtors for his services at the rate of $375 per hour.

15.     In addition, Boylan will seek reimbursement for his reasonable out-of-pocket expenses incurred in connection with his engagement as CRO.  Boylan will maintain detailed records of any actual and necessary or appropriate costs and expenses incurred in connection with his engagement as CRO.

16.     Boylan intends to apply to the Court for compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and orders of this Court.  In the event the Application is approved, the Debtors reserve the right to request the implementation of interim compensation procedures with respect to the fees and expenses incurred by the Debtors' professionals in the course of their engagement with the Debtors in this case; however, any such request will be made by separate motion.

17.     Upon the entry of an order by the Court granting this Application, the Debtors shall pay Boylan a retainer in the amount of $12,500 (the "Post-Petition Retainer").  Pursuant to the Consulting Agreement, the Debtors previously paid EJC a pre-petition retainer in the amount of $25,000 (the "Pre-Petition Retainer").  The Engagement Letter provides that Boylan will apply any funds remaining from the Pre-Petition Retainer toward the amount of the Post-Petition Retainer.  The Engagement Letter further provides that the Post-Petition Retainer shall be retained by Boylan and applied against his final invoice once the same has been approved by

the Bankruptcy Court.  Any funds remaining on deposit after the conclusion of Boylan's services shall be returned to the Debtors, or as otherwise directed by the Court.

## INDEMNIFICATION

18.    As set forth in the Engagement Letter, the Debtors shall indemnify Boylan to the same extent as the most favorable indemnification they extend to their current officers or directors.  The CRO shall be covered as an officer under the Debtors' existing director and officer liability insurance policies, to the extent that same remain in full force and effect.

19.    In addition, the Engagement Letter contains the following indemnification provision:

> The Company shall indemnify and hold John Boylan harmless from and against any and all expenses (including reasonable attorneys' fees) judgments and fines (if such settlement is approved in advance by the Company) incurred by reason of being made a party or threatened to be made a party to any civil, criminal, administrative or investigative action or suit (a "Claim"), by reason of any act or omission to act before or after the acceptance date of this agreement, or otherwise, by reason of the fact that he is or was a director or officer of the Company to the extent permitted by applicable law. It is expressly the intention of the parties hereto that John Boylan shall be indemnified by the Company in the manner set forth and to the maximum extent permitted by applicable law. In the event the Company shall be obligated hereunder to pay the expenses of any Claim, the Company shall be entitled to assume the defense of such Claim with counsel approved by John Boylan, which approval shall not be unreasonably withheld, upon the delivery to John Boylan of written notice of its election to do so. After delivery of such notice, approval of such counsel by John Boylan and the retention of such counsel by the Company, the Company will not be liable to John Boylan under this Agreement for any fees of counsel subsequently incurred by John Boylan with respect to the same Claim; provided that (i) John Boylan shall have the right to employ John Boylan's counsel in any such Claim at John Boylan's expense and (ii) if (A) the employment of counsel by John Boylan has been previously authorized by the Company, (B) the Company and John Boylan shall have reasonably concluded that there is a conflict of interest between the Company and John Boylan in the conduct of any such defense, or (C) the Company shall not continue to retain such counsel to defend such Claim, then the fees and expenses of John Boylan's counsel shall be at the expense of the Company. The Company shall have the right to conduct such defense as it sees fit in its sole discretion, including

the right to settle any claim against John Boylan without the consent of John Boylan.

## **DISCLOSURES**

20.     As discussed above and as set forth in the Declaration of John Boylan (the "Boylan Declaration") filed concurrently herewith, Boylan was retained by the Debtors prior to the Petition Date to provide consulting services to the Debtors relating to all aspects of their business operations, including evaluating and advising regarding cost saving opportunities, assisting in the preparation of bankruptcy schedules, assisting in preparing for and evaluating a plan of reorganization, negotiating amendments to existing credit facilities, and assisting and advising management with regard to proposed strategic transactions, including a section 363 sale, relating to the Debtors' bankruptcy case.  In connection with such engagement, Boylan received a retainer from the Debtors in the amount of $25,000 on September 3, 2015. $18,687.50 of the Pre-Petition Retainer was applied to satisfy fees and expenses incurred prior to the Petition Date.  As indicated above, the balance of the Pre-Petition Retainer, or $6,312.50, will be applied to the Post-Petition Retainer upon the approval of this Application by the Bankruptcy Court.

21.     The Debtors do not believe that Boylan received any preferential payments as his fees and expenses were billed against the Pre-Petition Retainer, his services were billed and paid in the ordinary course of EJC's business, and/or Boylan continued to provide new value to the Debtors after receiving such payment.  If Boylan is retained to serve as the CRO, and if any such transfers are determined to be preferential, and not subject to any defense or offset, Boylan will return the voidable transfer and will waive any prepetition claim based upon the return of the voidable transfer.

22.     To the best of the Debtors' knowledge, information and belief, other than as disclosed in the Boylan Declaration, Boylan has no connection with the Debtors, their creditors, or any other parties-in-interest herein or their respective attorneys or accountants.

23.     To the best of the Debtors' knowledge, information and belief, Boylan represents no interest adverse to the Debtors or to their estates in the matters for which he is proposed to be retained, and he is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code.  The Debtors submit that their employment of Boylan would be in the best interests of the Debtors, their estates, and their creditors.

24.     The Boylan Declaration has been executed in accordance with the provisions of section 327 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016(b), Local Bankruptcy Rule 2016-1, and the U.S. Trustee Guidelines.  The Debtors' knowledge, information and belief regarding the matters set forth herein are based and made in reliance upon the Boylan Declaration.

## NOTICE

25.     Notice of this Motion has been provided to (i) the office of the United States Trustee for the Southern District of Texas, (ii) the holders of the twenty (20) largest unsecured claims against the Debtors, (iii) the Debtors' secured lender(s), and (iv) all other parties requesting notice in these chapter 11 cases.  The Debtors respectfully submit that no other or further notice need be provided.

## EMERGENCY HEARING REQUESTED

26.     The Debtors have an immediate need to engage Boylan on a post-petition basis.  The Debtors are in the process of attempting to sell their business and/or assets and expect the sale process to move forward quickly.  Indeed, the Debtors already have a stalking horse bidder for certain of their assets and need to engage Boylan immediately to oversee their operations, assist in the preparation of the Debtors' bankruptcy schedules, assist in evaluating and negotiating a plan of reorganization, and negotiate with third parties regarding exit financing and/or a section 363 sale of the Debtors' business and/or assets.  The Debtors anticipate filing a motion to approve bid

procedures in the very near future and expect a sales transaction to close within the next couple of months.  As a result, the Debtors seek to employ Boylan immediately to participate in a section 363 sale and negotiate with the Debtors' third party lenders in an effort to maximize the potential recovery from a sale for the benefit of their estates. Accordingly, the Debtors request that the Court conduct an emergency interim hearing on the Application at the earliest date available on its docket and, following such emergency hearing, enter an interim order granting the Application and authorizing the Debtors to retain Boylan and pay him the Post-Petition Retainer to avoid immediate and irreparable harm to the Debtors' estates pending a final hearing on the Application.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter interim and final orders granting the relief requested herein and granting the Debtors all such other and further relief to which they may be justly entitled.

Dated: September 7, 2015

Respectfully submitted,

/s/ J. Robert Forshey
J. Robert Forshey
State Bar No. 07264200
Suzanne K. Rosen
State Bar No. 00798518
Clarke V. Rogers
State Bar No. 24052901
FORSHEY & PROSTOK, L.L.P.
777 Main Street, Suite 1290
Fort Worth, Texas 76102
Phone: (817) 877-8855
Fax: (817) 877-4151
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
crogers@forsheyprostok.com

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon the parties listed on the attached service list via United States Mail, first class postage prepaid, or via ECF electronic Notice, if available, on September 8, 2015.

/s/ J. Robert Forshey
J. Robert Forshey

## CERTIFICATE OF ACCURACY

The undersigned hereby certifies that the facts contained in the foregoing Motion are true and correct to the best of his knowledge.

/s/ Todd A. Hass
Todd A. Hass
Authorized Representative of the Debtors

L:\BFORSHEY\Diverse Energy Systems, LLC #5759\Pleadings\Application to Employ J. Boylan as CRO 9.7.15.docx

# EXHIBIT "A"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 CASES |
| | ) | |
| DIVERSE ENERGY SYSTEMS, LLC | ) | CASE NO. 15-34736 |
| | ) | |
| SCRIBNER INDUSTRIES, INC. | ) | CASE NO. 15-34737 |
| | ) | |
| DIVERSE ENERGY SYSTEMS, LLC | ) | CASE NO. 15-34738 |
| d/b/a LEAN TECHNOLOGIES, LLC | ) | |
| | ) | |
| ROULY, INC. | ) | CASE NO. 15-34739 |
| | ) | |
| Debtors. | ) | **Joint Administration Pending** |
| | ) | |
| | ) | **Emergency Hearing Requested** |
| | ) | |

### DECLARATION OF JOHN P. BOYLAN IN SUPPORT OF DEBTORS' EMERGENCY APPLICATION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE EMPLOYMENT OF JOHN BOYLAN AS CHIEF RESTRUCTURING OFFICER <u>FOR THE DEBTORS AS OF SEPTEMBER 8, 2015</u>

I, JOHN P. BOYLAN, state and declare:

1.    "My name is John P. Boylan.  I am the President of EJC GP, LLC, the general partner of EJC Ventures, LP, a Texas limited liability company, which maintains a business address at 801 Travis, Suite 1425, Houston, Texas 77002.

2.    I make this Declaration ("Declaration") in support of the *Debtors' Emergency Application for the Entry of Interim and Final Orders Authorizing the Employment of John Boylan as Chief Restructuring Officer for the Debtors as of September 8, 2015* (the "Application").[1]  I have read the Application and hereby certify that the statements contained therein are true and correct.

3.    The facts set forth in this Declaration are personally known to me based upon

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Application.

**DECLARATION OF JOHN BOYLAN IN SUPPORT OF DEBTORS' EMERGENCY APPLICATION TO EMPLOY JOHN BOYLAN AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS – Page 1**

personal knowledge, unless otherwise noted, and if called as a witness I would and could competently testify thereto.   To the extent that any information disclosed herein requires amendment or modification, I will submit a supplemental statement to the Court.

4.     I am a Certified Public Accountant licensed in the State of Texas. I have a great deal of experience providing financial and management consulting services to both public and private clients in the oil and gas exploration and production industry.  My practice areas and experience include executive management, asset management, corporate finance, complex financial reporting, and risk management.  Some of my key engagements include: (1) serving as Chief Financial Officer for Trek Oil and Gas, Inc. in Houston, Texas, from December 2012 to the present; (2) serving as Chief Executive Officer for EC Offshore Properties, Inc. in Houston, Texas, from September 2012 to the present; (3) serving as a financial consultant for Pisces Energy, LLC in Houston, Texas, and New Orleans, Louisiana, from December 2008 to August 2012; (4) serving as Chief Financial Officer for Probe Resources (PBR.H) in New Orleans, Louisiana, from April 2011 to April 2012; and (5) serving as a financial consultant for Saratoga Resources, Inc. (SARA) in Houston, Texas, from January 2008 to February 2009.

5.     The Debtors have agreed to engage me as the CRO for the Debtors effective as of September 8, 2015, on the terms set forth in the Engagement Letter.  Subject to the Court's approval, I will charge the Debtors an hourly fee of $375 per hour for my services as CRO.  In addition, I will seek reimbursement for my reasonable out-of-pocket expenses incurred in connection with my engagement as CRO for the Debtors.  I will maintain detailed records of my actual and necessary or appropriate costs and expenses incurred in connection with my engagement as CRO.  I intend to apply to the Court for compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and orders of this Court.

**DECLARATION OF JOHN BOYLAN IN SUPPORT OF DEBTORS' EMERGENCY APPLICATION TO EMPLOY JOHN BOYLAN AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS – Page 2**

6.      Upon the entry of an order by the Court granting the Application, the Debtors will pay me a retainer in the amount of $12,500, to which amount I will apply the sum of $6,312.50, which remains from the Pre-Petition Retainer paid by the Debtors to my firm, EJC Ventures, LP, on September 3, 2015.  The Post-Petition Retainer will be retained by me and applied against my final invoice once the same has been approved by the Bankruptcy Court.  Any funds remaining on deposit after the conclusion of my services will be returned to the Debtors, or as otherwise directed by the Court.

7.      Insofar as I have been able to ascertain, I do not hold an interest materially adverse to the Debtors or the Debtors' estates.

8.      I believe that I am a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

9.      Except as may specifically be allowed by the Bankruptcy Code, I have not shared or agreed to share (a) any compensation or reimbursement of expenses I have received or may receive in these Chapter 11 cases with any person or entity, or (b) any compensation another person or entity has received or may receive in these Chapter 11 cases.

10.     Except as otherwise disclosed herein, neither I nor any professional employed by me has any connections with the Debtors, creditors, or any other parties in interest, their respective attorneys and accountants, the United States Trustee or any person employed in the Office of the United States Trustee.

11.     In preparing this Statement, I or someone under my supervision and direction reviewed documents provided by the Debtors to determine whether I have any relationship with the parties in these chapter 11 cases.  To the extent such review indicated that I had or have a relationship with or connection to any interested party, such relationship or connection is disclosed below.

**DECLARATION OF JOHN BOYLAN IN SUPPORT OF DEBTORS' EMERGENCY APPLICATION TO EMPLOY JOHN BOYLAN AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS – Page 3**

**Connections with Parties in Interest**

12.    Based on information known to date, my connections with the Debtors, creditors, other parties in interest, their respective attorneys and accountants, the United States Trustee or any person employed in the Office of the United States Trustee, are as follows:

(a)    *Creditors and parties in interest.*  Some of the Debtors' creditors may routinely appear as creditors in other chapter 11 cases or be creditors of other businesses for which I have provided consulting services.  Consequently, I may have been involved in cases with, been adverse to, or been involved in transactions with some of the Debtors' creditors in other matters.  I am not aware of any connection with any of these entities or individuals that would disqualify me from serving as the Debtors' CRO in this matter.

(b)    *Attorneys, accountants and other professionals; Office of the United States Trustee.*  I may have in the past worked closely with one or more attorneys, accountants and other professionals who may participate in these Chapter 11 cases on behalf of the Debtors, creditors, or other parties in interest.  For example, I have been retained as a chief restructuring officer for the debtors in the chapter 11 case of *Crossfoot Energy, LLC, et al.,* Case No. 14-4468-rfn-11 currently pending in the United States Bankruptcy Court for the Northern District of Texas.  In addition, my firm EJC Ventures, LP has been employed as a financial consultant for the debtors in the jointly administered chapter 11 bankruptcy cases of *One Source Industrial Holdings, LLC, et al.;* Case No. 14-44996-rfn-11 currently pending in the United States Bankruptcy Court for the Northern District of Texas.  Forshey & Prostok, LLP ("F&P"), counsel for the Debtors, is counsel for the debtors in the Crossfoot and One Source cases as well, and I have worked closely with F&P's professionals in those cases.  Likewise, I may have worked closely in the past with the United States Trustee and/or persons employed by the Office of the United States Trustee in other bankruptcy cases.  I am not aware of any connection with any such person or entity which would disqualify me from serving as the Debtors' CRO in this matter.

13.    The disclosures above are based upon all information reasonably available to me at the time of filing of the Application.  I will supplement this Declaration as may be required by the Bankruptcy Code, Bankruptcy Rules, or the Court if and when any other connection requiring disclosure becomes known."

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7ᵗʰ day of September 2015.

John P. Boylan

# EXHIBIT "B"

**JOHN P. BOYLAN, CPA**
P.O. Box 27086
Houston, Texas 77227-7086
W (713) 222-6479 or C (713) 816-0440
jboylan@ejc-ventures.com

## PROFESSIONAL EXPERIENCE

**EJC Ventures, LP (Houston, TX)**                                          January 2008 – Present
*Consultant*
   Providing financial and management consulting to both public and private clients in the oil and gas exploration and production industry.  Practice areas and experience cover executive management, asset management, corporate finance, complex financial reporting and risk management. Key engagements include:

**Trek Oil and Gas, Inc.** (Houston, TX) (December 2012 – Present)
*Chief Financial Officer*
   A privately owned oil and gas prospect generation, exploration and production company operating properties in the Permian Basin.
   - Activities included preparation and oversight of financial reporting, corporate financings, taxes, accounting, risk management (bonding, insurance and hedging) and acquisitions.
   - Successfully closed on acquisition and financing for approximately $12.5 million and subsequent acquisition and development financing with $40 million private equity investment proposed.

**EC Offshore Properties, Inc.** (Houston, TX) (September 2012 – Present)
*Chief Executive Officer*
   A privately owned oil and gas exploration and production company operating in the federal offshore waters of the Gulf of Mexico.
   - Manage post-Ch. 11 corporate restructuring and stabilization for purpose of salvaging private equity investment.
   - Activities include preparation and oversight of financial and management reporting, taxes and risk management, capital budgeting, corporate financing, project and property management, including work-over, recompletion, repair and maintenance and abandonment operations.

**Pisces Energy, LLC** (Houston, TX and New Orleans, LA) (December 2008 – August 2012)
*Financial Consultant*
   A privately owned oil and gas exploration and production company operating in the federal offshore waters of the Gulf of Mexico.
   - Actively participated in successful reorganization under Ch. 11 of US Bankruptcy code including exit financing with $83 million private equity and subordinated debt investment along with $50 million in senior term debt.
   - Activities include preparation and oversight of capital budgeting, financial and management reporting, corporate financings, taxes, risk management (bonding, insurance and hedging) and acquisitions team leader.

**Probe Resources (PBR.H)** (New Orleans, LA) (April 2011 – April 2012)
*Chief Financial Officer*
   A publicly traded (TSX-V) oil and gas exploration and production company operating in the federal offshore waters of the Gulf of Mexico.
   - Manage post-Ch. 11 corporate restructuring and stabilization for purpose of salvaging private equity investment. Same PE owner as Pisces Energy, LLC.
   - Activities include preparation and oversight of public financial and management reporting, taxes, capital budgeting, IFRS conversion and corporate financing. Key mergers and divestitures team member.

*John P. Boylan, CPA*
*Page 2 of 3*

- Successfully merged entity with Rooster Resources, Ltd (COQ.H) effective April 30, 2012 with an enterprise value of approximately $100 million.

**Saratoga Resources, Inc.** (SARA) (Houston, TX) (January 2008 – February 2009)
*Financial Consultant*
    A publicly traded (NYSE-AMEX) oil and gas exploration and production company operating in the state waters of Louisiana.
- Activities included oversight of accounting, financial and SEC reporting, corporate financings and acquisitions.
- Served as a member of the Equity Committee in successful Ch. 11 Reorganization proceeding from April 2009 to May 2010.
- Successfully closed acquisition and financing for approximately $125 million.

**Atasca Resources, (Houston, TX)**                November2003 – December2007
*Manager*
    A privately owned Texas based oil and gas exploration and production company.

**Birdwell Partners, (Houston, TX)**            September1999 – August 2003
*Chief Executive Officer, President and Managing Partner*
    A privately owned oilfield services entity located in Houston, Texas serving the upstream oil and gas industry with business units in OCTG storage, non-destructive tubular inspection (NDT and FLUT) and trucking.

**Prolithic Energy Company, (Houston, TX)**       January 1996 – July 2002
*Chief Financial Officer and Limited Partner*
    A privately owned oil and gas prospect generation, exploration and production company.

**Coopers & Lybrand Consulting, (New York, NY)**      October1991 – December1995
*Senior Associate*
    Project management and control of major construction and business projects.

**R.L. Townsend & Associates, (Dallas, TX)**      December1990 – September1991
*Management Consultant*
    Project management and control of major construction projects.

**KPMG Peat Marwick, (Dallas, TX)**      September1988 – November1990
*Senior Auditor*
    Team member of auditing practice performing and managing financial audits and special accounting projects for companies in the oil & gas and real estate industries.

## PROFESSIONAL AND PHILANTHROPIC AFFILIATIONS

- Certified Public Accountant licensed in the State of Texas.

- Member of the Houston Chapter of the Texas Society of Certified Public Accountants.

- Member of the Independent Petroleum Association of America and the Turnaround Management Association.

- Serving on the Board of Trustees of the John Austin Cheley Foundation (www.cheleyfoundation.org), based in Denver, CO, which funds needs-based camperships for high potential youth to attend summer wilderness camps. Member of the Executive Committee and Treasurer since June 2013.

- Serving on the Board of Directors of Houston American Energy Corp. (HUSA), a publicly traded (NYSE-AMEX) oil and gas exploration and production company, since May 2006. Chairman of Audit and Compensation Committees.

- Served as a member of the Board of Directors of GulfWest Energy, Inc. (GULF), a publicly traded oil and gas exploration and production company, from August 2001 to June 2003. Member of Audit and Compensation Committees.

*John P. Boylan, CPA*
*Page 3 of 3*

- In December 2007, filed a bankruptcy petition under Chapter 7 of the United States Bankruptcy Code in Cause No. 07-38742-H3-7 in the U.S. District Court for the Southern District of Texas, Houston Division. Received a discharge from Chapter 7 in June 2009. The bankruptcy petition was filed in response to efforts by a creditor to collect obligations of a division of Birdwell Partners, of which I was a prior part owner, which obligations were personally guaranteed by me.

## EDUCATION

**New York University's Leonard N. Stern Graduate School of Business, New York, NY**                    1995
*MBA – Finance, Economics and International Business*

**University of Texas' McCombs School of Business, Austin, TX**                    1988
*BBA - Accounting*

# EXHIBIT "C"

# EJC VENTURES, LP

P.O. Box 27086 • Houston, TX 77227-7086

Phone: (713) 222-6479

September 7, 2015

Mr. Chet Erwin
Diverse Energy Systems LLC
1301 McKinney, Suite 3300
Houston, TX  77010

Re:  Engagement of John P. Boylan, through EJC Ventures, LP as Chief Restructuring Officer ("CRO") for Diverse Energy Systems LLC and its affiliates and subsidiaries, each as a debtor and debtor in possession (collectively, the "Company").

Dear Mr. Erwin:

This letter confirms and sets forth the terms and conditions of my engagement as the Chief Restructuring Officer by the Company, including the scope of the services to be performed and the basis of compensation for those services.  The Company is currently operating as a debtor in possession under Chapter 11 of title 11 (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), in (the "Chapter 11 Cases").  Upon execution of this letter by each of the parties below, and entry of the Approval Order (as defined below), this letter shall constitute an agreement between the Company and myself. The Company currently needs independent involvement in plan formation and execution, which will likely include exit financing and/or selling the assets at an auction conducted under Section 363 of the Bankruptcy Code (the "363 Sale").

1. Description of Services

a. Duties and Powers.

Through EJC Ventures, LP, I shall serve as the CRO of the Company and shall supervise and oversee the daily operation of the Company, preparation of a plan of reorganization, negotiation with third party exit financing and/or the 363 Sale of the Company's Assets (and over all aspects thereof).  In this capacity, I shall have the authorization to: (a) to open and close bank accounts for the Company, (b) to transfer funds of the Company, (c) to cause the Company to modify, amend, terminate and/or enforce any of its any contractual rights; (c) to cause the Company to enter into any agreement or contract that is reasonably necessary to the completion of the 363 Sale; (d) cause the Company to comply with all Guidelines of the Office of the United States Trustee, (e) to cause the Company to pursue, settle or compromise any litigation, controversy or other dispute involving the Company, (f)  to make employment related decisions following consultation with the Company's counsel; (g) to cause the Company to exercise the Company's rights under the Company's agreements and other agreements in favor of the Company; (h) to negotiate and enter into agreements with potential Debtor In Possession lenders (i) to complete a 363 sale of the Company's assets (j) to cause the Company to prepare one or more plans of reorganization, or to take any all action in the Chapter 11 Cases, and (k) all such other acts as may be reasonably necessary and appropriate to the management or operation of the Company or its bankruptcy estate.

Mr. Chet Erwin
Diverse Energy Systems LLC
September 7, 2015
Page 2


b. Communication with Company Lenders and Lessors

In furtherance of the objectives of this engagement, it is agreed by the Company that its primary lenders and lessors (the "Creditors") in their role as lenders and lessors to the Company, shall have reasonable access to Company records and documents that are appropriate for disclosure to the Bank, including any reports generated by the CRO. In this regard, the Creditors shall be able to communicate with Mr. Boylan in his role as CRO for the Company.

2. Compensation

a. I shall bill the Company on a monthly basis by the 5th day of the month following the month I am seeking compensation. I will be paid by the Company for the services of the CRO at the hourly rate of $375/hour.

b. In addition, I will be reimbursed by the Company for the reasonable out-of-pocket expenses of the CRO, incurred in connection with this assignment, such as reasonable out-of-town travel, reasonable out-of-town lodging, duplications, computer research, messenger and telephone charges. All expenses due to me will be billed on a monthly basis.

c. Upon the execution of this Agreement, and entry of an order in the Chapter 11 Cases approving this Agreement under Section 363(b) of the Bankruptcy Code (the "Approval Order"), the Company shall pay a retainer of $12,500. I will apply against this retainer an amount (up to $12,500) of any unused funds held as part of my Consulting Contract with the company. The CRO retainer shall be retained and applied against my final invoice. Any funds remaining on deposit after the conclusion of our services shall be returned to the Company, or as otherwise directed by the Court.

3. Term

The engagement will commence effective as of September 8, 2015 and may be terminated by either party without cause by giving 7 days written notice to the other party. In the event of any such termination, any fees and expenses due to me through the effective date of such termination shall be applied to the remaining balance of the advance payment to the extent a balance exists and then any additional fees and expenses shall be remitted promptly (including fees and expenses that accrued prior to but were invoiced subsequent to such termination). The Company may immediately terminate my services hereunder at any time for Cause (hereinafter defined) by giving written notice to me. My services may be immediately terminated hereunder at any time for Good Reason (hereinafter defined) by giving written notice to the Company. Upon any such termination, the Company shall be relieved of all of its payment obligations under this Agreement, except for the payment of fees and expenses through the effective date of termination (including fees and expenses that accrued prior to but were invoiced subsequent to such termination) and its obligations under paragraph 8. For purposes of this Agreement, "Cause" shall mean if (i) the CRO is convicted of, admits guilt in a written document filed with a court of competent jurisdiction to, or enters a plea of nolo contendere to, an allegation of fraud, embezzlement, misappropriation or any felony; or (ii) a material breach of any of my material obligations under this Agreement which is not cured within 30 days of the Company's written notice thereof to me describing in reasonable detail the nature of the alleged breach. For purposes of this Agreement, termination for "Good Reason" shall mean termination caused by a breach by the Company of any of its material obligations under this Agreement that is not cured within 5 days of my having given written notice of such breach to the Company describing in reasonable detail the nature of the alleged breach.

Mr. Chet Erwin
Diverse Energy Systems LLC
September 7, 2015
Page 3

4. Confidentiality / Non-Solicitation.

I shall keep as confidential all non-public information received from the Company in conjunction with this engagement, except (i) as requested by the Company or its legal counsel; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this engagement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision.

5. Indemnification.

The Company shall indemnify me to the same extent as the most favorable indemnification it extends to its officers or directors, whether under the Company' bylaws, its certificate of incorporation, or otherwise, and no reduction or termination in any of the benefits provided under any such indemnities shall affect the benefits provided to me. The CRO shall be covered as an officer under the Company's existing director and officer liability insurance policies, to the extent that same remains in full force and effect. The attached indemnity provisions are incorporated herein and the termination of this agreement or the engagement shall not affect those provisions, which shall survive termination. The provisions of this section 5 are in the nature of contractual obligations and no change in applicable law or the Company' charter, bylaws, or other organizational documents or policies shall affect my rights hereunder.

6. Miscellaneous.

This Agreement shall (together with the attached indemnity provisions) be: (a) governed and construed in accordance with the laws of the State of Texas, regardless of the laws that might otherwise govern under applicable principles of conflict of laws thereof; (b) incorporates the entire understanding of the parties with respect to the subject matter thereof; and (c) may not be amended or modified except in writing executed by each of the signatories hereto. The Company and I agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the performance or non-performance of the Company or me hereunder. Any disputes arising from or relating to this Agreement shall adjudicated by the Court.

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

John P. Boylan,
Manager of EJC GP, LLC, its Managing Partner

Mr. Chet Erwin
Diverse Energy Systems LLC
September 3, 2015
Page 4


Accepted and Agreed:


Diverse Energy Systems, LLC and its affiliates and subsidiaries, each as a debtor and debtor in possession

By:_____

Name: Chet Erwin

Title: Chief Executive Officer

Mr. Chet Erwin
Diverse Energy Systems LLC
September 7, 2015
Page 5

Exhibit A

Indemnification

The Company shall indemnify and hold John Boylan harmless from and against any and all expenses (including reasonable attorneys' fees) judgments and fines (if such settlement is approved in advance by the Company) incurred by reason of being made a party or threatened to be made a party to any civil, criminal, administrative or investigative action or suit (a "Claim"), by reason of any act or omission to act before or after the acceptance date of this agreement, or otherwise, by reason of the fact that he is or was a director or officer of the Company to the extent permitted by applicable law. It is expressly the intention of the parties hereto that John Boylan shall be indemnified by the Company in the manner set forth and to the maximum extent permitted by applicable law. In the event the Company shall be obligated hereunder to pay the expenses of any Claim, the Company shall be entitled to assume the defense of such Claim with counsel approved by John Boylan, which approval shall not be unreasonably withheld, upon the delivery to John Boylan of written notice of its election to do so. After delivery of such notice, approval of such counsel by John Boylan and the retention of such counsel by the Company, the Company will not be liable to John Boylan under this Agreement for any fees of counsel subsequently incurred by John Boylan with respect to the same Claim; provided that (i) John Boylan shall have the right to employ John Boylan's counsel in any such Claim at John Boylan's expense and (ii) if (A) the employment of counsel by John Boylan has been previously authorized by the Company, (B) the Company and John Boylan shall have reasonably concluded that there is a conflict of interest set between the Company and John Boylan in the conduct of any such defense, or (C) the Company shall not continue to retain such counsel to defend such Claim, then the fees and expenses of John Boylan's counsel shall be at the expense of the Company. The Company shall have the right to conduct such defense as it sees fit in its sole discretion, including the right to settle any claim against John Boylan without the consent of John Boylan.

# SERVICE LIST

**Service List**
**Diverse Energy Systems, et al.**
**#5759**

Diverse Energy Systems, LLC, et al.
Attn: Todd A. Hass, CFO
1301 McKinney, Suite 3300
Houston, TX 77010

Office of the U.S. Trustee
515 Rusk Ave., Suite 3516
Houston, TX 77002

IRS – U.S. Treasury
PO Box 7346
Philadelphia, PA 19101

National Oilwell Varco, L.P., - Mfg.
10000 Richmond Avenue, Suite 100
Houston, TX 77042

Howard Operating – HEP
17806 IH-10 West, Suite 210
San Antonio, TX 78257

Greatwide Dallas Mavis, LLC
PO Box 405828
Atlanta, GA 30384-5828

Mustang CAT Power Systems
12800 Northwest Freeway
Houston, TX 77040

**Jim Anderson**
**272 Edennold Dr. NW**
**Calgary, Alberta T3A4A4**
**CANADA**

Ratner Steel Supply Company
MI14
P.O. Box 9201
Minneapolis, MN 55480-9201

Murphy Industries
Dept. 96-0494
Oklahoma City, OK 73196-0494

United Holdings LLC
dba Buck's Engines
PO Box 731595
Dallas, TX 75373-1595

CGSI
PO Box 941417
Houston, TX 77094

Pannell Kerr Forster
5847 San Felipe, Suite 2400
Houston, TX 77057-3092

StrongFab Solutions, Inc.
P.O. Box 41266
Houston, TX 77241

FMC Technologies Measurement Solutions,
Inc.
14121 Collections Center Drive
Chicago, IL 60693

Knighten Machine & Service, Inc.
dba Knighten Industries
3323 N. County Rd. W.
Odessa, TX 79764

Twin Stars Compression, LLC
100 Iowa
Bloomfield, NM 87413

Ventech Process Equipment, Inc.
PO Box 4261
Pasadena, TX 77502

Erwin Caraballo
6020 NW 99th Ave., Suite 308
Doral, FL 33178

Texas Industrial Engine Parts, Inc.
PO Box 590
George West, TX 78022

World Wide Electric Corp.
3540 Winton Place
Rochester, NY 14623

Houston Global Heat Transfer
14446 Smith Rd.
Humble, TX 77396

**George Fort**
**Ave. 3G No 71-37**
**Maracaibo, Venezuela**

Industrial Piping Specialists Inc.
P.O. Box 581270
Tulsa, OK 74158

Command Center, Inc.
P.O. Box 951753
Dallas, TX 75395-1753

Westair-Praxair Distribution
dba West Air Gas & Equipment
PO Box 1339
Abilene, TX 79604

Blackmer, Divison of Dover Energy
1809 Century SW
Grand Rapids, WI 49503

Robert D. Duncan
dba DK Trucking
PO Box 13378
Odessa, TX 79768

General Steel Warehouse, Inc.
P.O. Box 2037
Lubbock, TX 79408

Angus Measurement Systems, LP
PO Box 14440
Odessa, TX 79768

Elliott Electric Supply Inc.
PO Box 630610
Nacogdoches, TX 75963

Quail Energy Services, LP
PO Box 777
Andrews, TX 79714

Anton Friske
78 Shiloh Rd.
Odessa, TX 79762

Custom Fiberglass Inc.
PO Box 70
Mills, WY 82644

Precision Welding and Machine, LLC
PO Box 61710
Midland, TX 79711-1710

Valley Industrial X-Ray & Inspection Service, Inc.
APPLUS RTD – VIXR Lockbox
25636 Network Place
Chicago, IL 60673-1256

Enterprise Fleet Management Inc.
PO Box 800089
Kansas City, MO 64180-0089

Mario A. Castro
dba Ace Sheetmetal Production
3237 S. Einstein Ave.
Odessa, TX 79766

Duncan Co.
425 Hoover Street NE
Minneapolis, MN 55413

Hughes Oilfield Transportation, Inc.
2513 N Mercury Ave.
Odessa, TX 79763-1922

Grainger
4110 S County Road 1276
Midland, TX 79706

Ameripride Linen
P.O. Box 3160
Bemidji, MN 56619-3160

Permian Machinery Movers, Inc.
P.O. Box 11281
Odessa, TX 79760-8281

Alerus Financial - Alerus Acct
P.O. Box 6001
Grand Forks, ND 58206

Integral Equipment Leasing, LLC
1301 McKinney, Suite 3300
Houston, TX 77010

Nations Equipment Finance
501 Merritt Seven, 6th Floor
Norwalk, CT 06851

Fountain Partners
50 California St., Suite 3330
San Francisco, CA 94111

City of Grafton
Municipal Utilities
P.O. Box 578
Grafton, ND 58237

Ally
P.O. Box 9001948
Louisville, KY 40290-1948

Liberty Power Holdings, LLC
25901 Network Place
Chicago, IL 60673

City of Odessa
411 West 8th St.
Odessa, TX 79760

AT&T
PO Box 5001
Carol Stream, IL 60197

AT&T Mobility
PO Box 6463
Carol Stream, IL 60197

Direct TV
PO box 78626
Phoenix, AZ 85062

Waste Management
PO Box 4648
Carol Stream, IL 60197

De Lage Landen Financial Services, Inc.
PO Box 41602
Philadelphia, PA 19101-1602

Midcontinent Communications
PO Box 5010
Sioux Falls, SD 57117

SRT Communications
P.O. Box 2027
Minot, ND 58702-2027

TW Telecom
PO box 172567
Denver, CO 80217

Municipal Utilities
PO Box 578
Grafton, ND 58237

CenturyLink
PO Box 91154
Seattle, WA 98111

Polar Communications
P.O. Box 270
Park River, ND 58270

Montana Dakota Utilities Co.
PO Box 5600
Bismarck, ND 58506-5600

Verendrye Electric Cooperative
615 Hwy 52 West
Velva, ND 58790

Comcast Corporation
One Comcast Center, 32nd Floor
Philadelphia, PA 19103

Refuse Disposal Service
1463 Detweiler Dr.
Grafton, ND 58237-2603

The Aldridge Company
P.O. Box 56506
Houston, TX 77256