# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 CASES |
| | § | |
| DIVERSE ENERGY SYSTEMS, LLC | § | CASE NO. 15-34736 |
| | § | |
| SCRIBNER INDUSTRIES, INC. | § | CASE NO. 15-34737 |
| | § | |
| DIVERSE ENERGY SYSTEMS, LLC | § | CASE NO. 15-34738 |
| d/b/a LEAN TECHNOLOGIES, LLC | § | |
| | § | |
| ROULY, INC. | § | CASE NO. 15-34739 |
| | § | |
| Debtors. | § | **Jointly Administered Under** |
| | § | **Case No. 15-34736-H5-11** |
| | § | |

## OBJECTION OF CHET ERWIN TO NOTICE OF DESIGNATION OF STALKING HORSE BID
**[This Objection Relates to the Notice at Docket No. 286]**

Chet Erwin ("Erwin") hereby files this Objection (the "Objection") to the Notice of Designation of Stalking Horse Bid [Docket No. 286] (the "Notice"). In support of this Objection, Erwin respectfully states as follows:

### INTRODUCTION

1. ITS Engineered Systems, Inc., Diverse Energy Systems, LLC, Scriber Industries, Inc., Diverse Energy Systems, LLC d/b/a Lean Technologies, LLC and Rouly, Inc. (collectively, the "Debtors") are seeking to sell substantially all of their assets through a section 363 sale across two bankruptcy cases. All Debtors other than ITS Engineered Systems, Inc. ("ITS") are being jointly administered under Case No. 15-34736.

2. On November 19, 2015, the Court entered the Order Granting Debtors' Motion to Establish Bid Procedures and to Sell Certain Assets of the Estate Free and Clear of

Liens, Claims, Encumbrances and Other Interests Pursuant to 11 U.S.C. §363 and to Assume and Assign Executory Contracts and Leases [Docket No. 212] (as amended, the "Sale Procedures Order") approving certain bidding and auction procedures (the "Bid Procedures") for a sale of substantially all of the Debtors' assets.

3. The Sales Procedures Order was subsequently amended and supplemented on December 16, 2015 to provide updated deadlines for submission of Qualified Bids[1], designation of a stalking horse bid and related approval hearing, and a new Auction and Sale Hearing Date. Significantly, neither the Sale Procedures Order nor the Motion to approve Sale and Bid Procedures [Docket No. 178] (the "Sale Motion") specifically reference bid protections or break-up fees or seek approval of any bid protections or break-up fees. The only reference to bid protections and break-up fees is found in the form of asset purchase agreement which was not filed until November 11, 2015, three days before the hearing to approve the sale and auction procedures.

4. Erwin, the Chief Executive Officer of the Debtors and a debtor-in-possession lender to the Debtors, submitted a bid for the Debtors' assets on behalf of a yet to be formed entity. On information and belief, Cimarron Energy Inc. ("Cimarron") also submitted a bid for the Debtors' assets.

5. On December 29, 2015, the Debtors filed the Notice designating Cimarron as the Stalking Horse. Significantly, the Notice indicates that the Stalking Horse APA will be filed "in substantially final form as soon as reasonably practicable", but contains no information about the Stalking Horse bid or any detail on proposed bid protections. Through conversations

---

[1] Capitalized terms used herein and not otherwise defined have the meaning is the Sales Procedures Order.

with the Debtors and their respective advisors, Erwin is informed that Cimarron is seeking a break-up fee of up to $300,000.

## OBJECTION

### I. The Break-Up Fee Should Not Be Approved

#### A. The Break-Up Fee Does Not Benefit the Estate

6. Section 363(b) of the Bankruptcy Code requires that for fees to be awarded, they must be part of the "actual, necessary costs and expenses of preserving the estate." *In re Reliant Energy Channelview LP*, 594 F.3d 200, 208-09 (3d Cir. 2010). The party seeking payment of an expense bears the "heavy burden" of demonstrating that the expense is necessary to preserve the value of the estate. *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 533 (3d Cir. 1999). Here, neither the Debtors nor Cimarron can meet this "heavy burden." The break-up fee requested by the Debtors and Cimarron is an unnecessary fee yielding no benefit to the estate and that will only serve to provide Cimarron an inherent advantage at the auction and chill bidding.

7. In cases where a potential buyer will bid regardless of whether break-up fees are offered, "the break-up fee cannot be characterized as necessary." *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d at 535. Erwin is just such a potential purchaser. Erwin has prepared and submitted a bid to partake in a competitive auction process and will remove and no longer request any stalking horse protection from its bid, including a break-up fee. Significantly, no break-up fee is necessary as Erwin has submitted a bid that is higher and better than Cimarron's bid.

8. Because the break-up fee is not necessary to induce bidding, the practical effect of the break-up fee is to provide Cimarron with an unfair advantage over other bidders, an impermissible purpose for break-up fees. *Id* at 535. If approved, Erwin and other bidders

3

would be disadvantaged because any bid must be at least $400,000 in excess of Cimarron's bid (the $300,000 break-up fee plus the bid increment of $100,000 approved by the Sale Procedures Order), a significant amount relative to the value of the Debtors' assets. Requiring such a large over-bid amount will no doubt chill bidding and detract from what would otherwise be a more competitive auction process and potentially negatively impact the ultimate recovery for the Debtors' estates. Indeed, if the break-up fee is allowed in this case, it puts Cimarron in such an advantageous position *vis-à-vis* other bidders that Erwin may very well decide not to participate in the Auction.

      B.     <u>The Break-Up Fee Is Too High</u>

9.     Should the Court determine that Cimarron is entitled to a break-up fee, Erwin submits that the proposed break-up fee is too high and should be significantly reduced.

10.     Discouraging competitive bidding is directly contrary to the goal of maximizing an estate's assets. In upholding a bankruptcy court's denial of a request for a break-up fee, the Third Circuit suggested that when evaluating break-up fees, it is appropriate to consider "whether the break-up fee is a fair and reasonable percentage of the proposed purchase price" and "whether the amount of the break-up fee is so substantial that it has a 'chilling effect' on other potential buyers." *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d at 534-36.

11.     Erwin submits that a $300,000 break-up fee is an unreasonably high break-up fee in the current proceeding. Further, the break-up-fee effectively requires all potential bidders to outbid Cimarron by $400,000. Effectively requiring such a large bid increase will chill bidding and detract from a competitive auction process. Erwin submits that, if approved, any break-up fee should be reduced to a level that will not chill bidding and that does not provide Cimarron with an unnecessary and unjust bidding advantage in the auction process against alternate competing bids.

4

## II. The Stalking Horse Bid Should not be Approved and the Sale Process Should be Delayed.

12. More fundamentally, the proposed Stalking Horse Bid should be denied and the sale process should be delayed. Erwin has submitted a competing bid and discussed such bid with the Debtors chief restructuring officers and investment banker, and, on information and belief, the Debtors believe that Erwin's proposed bid is better for the Debtors' estates. However, because Erwin's proposed bid includes reinstating debt and paying certain claims over time, it may be more appropriate to pursue Erwin's bid through a plan of reorganization rather than a sale process. Accordingly, Erwin submits that the sale process should be delayed to allow the Debtors additional time to determine if pursuing a plan of reorganization would provide a greater benefit to the Debtors' estates. Erwin is willing to provide additional debtor-in-possession, subject to mutually agreeable terms between Erwin and the Debtors, to fund the Debtors' operations as it pursues a potential plan with Erwin as the sponsor.

WHEREFORE, for the reasons set forth above, Erwin respectfully requests that the Court (a) enter an order consistent with this Objection; and (ii) grant to Erwin such other and further relief as is just and proper.

Respectfully submitted this 31st day of December, 2015.

                                 **ANDREWS KURTH LLP**

                            By: */s/ David Zdunkewicz*
                                David Zdunkewicz
                                Texas Bar No. 22253400
                                Joseph P. Rovira
                                State Bar No. 24066008
                                **ANDREWS KURTH LLP**
                                600 Travis, Suite 4200
                                Houston, Texas 77002
                                (713) 220-4200 (telephone)
                                (713) 220-4285 (facsimile)
                                davidzdunkewicz@andrewskurth.com
                                josephrovira@andrewskurth.com

                                **Attorneys for CHET ERWIN**

## **CERTIFICATE OF SERVICE**

The foregoing document was served this 31st day of December, 2015 via the Court's ECF Notification System on those parties entitled to receive notice

<i><u>/s/ Joseph P. Rovira</u></i><br>
Joseph P. Rovira