## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 CASES |
| | ) | |
| DIVERSE ENERGY SYSTEMS, LLC | ) | CASE NO. 15-34736 |
| | ) | |
| SCRIBNER INDUSTRIES, INC. | ) | CASE NO. 15-34737 |
| | ) | |
| DIVERSE ENERGY SYSTEMS, LLC | ) | CASE NO. 15-34738 |
| d/b/a LEAN TECHNOLOGIES, LLC | ) | |
| | ) | |
| ROULY, INC. | ) | CASE NO. 15-34739 |
| | ) | |
| Debtors. | ) | **Jointly Administered Under** |
| | ) | **Case No. 15-34736-H5-11** |
| | ) | |

## NOTICE OF AMENDED CONTINGENT PROPOSED SALE ORDER

**PLEASE BE ADVISED THAT** in the event Debtors, Diverse Energy Systems, LLC,

Diverse Energy Systems, LLC d/b/a Lean Technologies, LLC, Scribner Industries, Inc., and Rouly,

Inc. (collectively, the "**Debtors**") finalize an asset purchase agreement with Cimarron Acquisition

Co ("**Cimarron**"), and Cimarron is the Successful Bidder[1], Debtors reserve the right to submit the

form of proposed sale order attached hereto as **Exhibit A** to the Court for consideration at the sale

hearing currently scheduled for Tuesday, January 19, 2016.  For the convenience of the Court and

the parties, attached hereto as **Exhibit B** is a redline comparison of the sale order attached hereto

as Exhibit A to the prior version of the sale order filed earlier today at Docket No. 334.  The sale

order is subject to ongoing negotiations and potential revision prior to the sale hearing.

---

[1] Capitalized terms shall have the meaning ascribed in the Order Establishing Bid Procedures entered by this Court on November 19, 2015 (Dkt. No. 212).

1

Respectfully submitted this 15th day of January, 2016.

Respectfully submitted,

/s/ J. Robert Forshey
J. Robert Forshey
State Bar No. 07264200
Clarke V. Rogers
State Bar No. 24052901
FORSHEY & PROSTOK, L.L.P.
777 Main Street, Suite 1290
Fort Worth, Texas 76102
Phone: (817) 877-8855
Fax: (817) 877-4151
bforshey@forsheyprostok.com
crogers@forsheyprostok.com

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been electronically filed in the case with the Clerk of the United States Bankruptcy Court by using the CM/ECF system, a copy was served on the parties who receive notice via the Court's ECF notification system, and the foregoing document was served via email on the parties listed below on this the 15th day of January, 2016.

Ellen Maresh Hickman
**Office of the U.S. Trustee**
ellen.hickman@usdoj.gov

Thomas G. Wallrich / Joel Nesset
Bryan Patrick Vezey
Cozen O'Connor
twallrich@cozen.com
jnesset@cozen.com
bvezey@cozen.com
Attorneys for **Alerus Financial, N.A.**

Joseph G. Epstein / Sean B. Davis
Winstead PC
jepstein@winstead.com
sbdavis@winstead.com
Attorneys for **Fountain Leasing 2013, LP**

Jim Rea / Marc W. Taubenfeld
McGuire, Craddock & Strother, PC
jrea@mcslaw.com
mtaubenfeld@mcslaw.com
Attorneys for **Grand Bank of Texas**

Michael D. Warner
Cole Schotz P.C.
mwarner@coleschotz.com
Attorneys for **Nations Fund I, LLC**

Michael W. Bishop
Gray Reed & McGraw, P.C.
mbishop@grayreed.com
Attorneys for **ITS Engineered Systems, Inc.**

H. Miles Cohn
Crain, Caton & James, PC
mcohn@craincaton.com
Attorney for the **Official Committee of Unsecured Creditors of ITS Engineered Systems, Inc.**

Cary M. Grossman
Shoreline Capital Advisors, Inc.
cgrossman@shorelinecapitaladvisors.com
**CRO for ITS Engineered Systems, Inc.**

John P. Boylan, CPA
EJC Ventures, LP
jboylan@ejc-ventures.com
**CRO for Debtors**

Matthew D Cavenaugh
Jackson Walker LLP
mcavenaugh@jw.com
Attorneys for **Howard Operating – HEP**

James Scott Douglass
Attorney at Law
jsd@aol.com
Attorney for **James Scott Douglas**

Eric Gould
O'Connor Craig Gould Evans
egoac99@gmail.com
Attorneys for **Icon Bank of Texas, N.A.**

Thomas H Grace
Vorys, Sater, Seymour and Pease LLP
thgrace@vorys.com
Attorneys for **National Oilwell Varco**

Tara L Grundemeier
Linebarger Goggan Blair
houston_bankruptcy@publicans.com
Attorneys for **Cypress Fairbanks ISD and Harris County**

Dax D Voss
Field Manning et al.
dvoss@lubbocklawfirm.com
Attorneys for **General Steel Warehouse, Inc.**

Patricia Williams Prewitt
Law Office of Patricia Williams Prewitt
pwp@pattiprewittlaw.com
Attorneys for **El Paso, LLC**

Richard M Simses
Cotten Schmidt & Abbott, L.L.P.
rsimses@csa-lawfirm.com
Attorneys for **FMC Technologies Measurement Solutions, Inc.**

Courtney Hull
Office of the Attorney General
bk-chull@texasattorneygeneral.gov
Attorneys for **Texas Comptroller of Public Accounts**

Weldon L. Moore, III
Sussman & Moore, LLP
wmoore@csmlaw.net
Attorneys for **Dominion Transmission, Inc.**

Russell R. Johnson III / John M. Craig
Law Firm of Russell R. Johnson III, PLC
russj4478@aol.com
Attorneys for **Dominion Transmission, Inc.**

James Arthur Collura
Coats Rose
jcollura@coatsrose.com
Attorneys for **Mustang Machinery Company Ltd. dba Mustang Cat**

John F. Higgins, IV
Porter Hedges LLP
jhiggins@porterhedges.com
Attorneys for **Energy Transfer Partners, LP**

Michael S. Holmes
Michael S. Holmes, PC
mshpclaw@gmail.com
Attorneys for **Charles G. Shook**

Mary Elizabeth Kindelt / Gary M. McDonald
McDonald, McCann, Metcalf, and Carwile
mkindelt@mmmsk.com
gmcdonald@mmmsk.com
Attorneys for **Industrial Piping Specialists Inc.**

James F. Kovach
McElvaney & Kovach, LLP
jim@kovachlaw.net
Attorneys for **Flo-Tite**, **New Era Maxtek, Inc.**

George A. Kurisky, Jr.
Johnson DeLuca Kurisky & Gould, PC
gkurisky@jdkklaw.com
Attorneys for **Enterprise FM Trust**

Daniel J. Lowenberg
Fleming & Lowenberg
dlowenberg@mountainlawgroup.com
Attorneys for **Brandon Plumb**

James Matthew Schober
Schober & Schober, PC
jim@schoberlegal.com
Attorneys for **Coyote Capital Management, LLC**

Nicholas Zugaro / Eric M. Van Horn
Amber M. chambers
McCathern, PLLC
nzugaro@mccathernlaw.com
ericvanhorn@mccathernlaw.com
achambers@mccathernlaw.com
Attorneys for **Spunky Flat Land Company**, **FWT Leasing Company**, **Charles G. Shook**, and **Client Growth Specialists, Inc.**

Spencer D. Solomon
Nathan Sommers Jacobs PC
ssolomon@nathansommers.com
Attorneys for **Twin Stars Compression, LLC**

Dustin L. Perry
Steven W. Soule
Hall, Estill, Hardwick, et al.
dperry@hallestill.com
ssoule@hallestill.com
Attorneys for **J.W. Williams, Inc.**

Patrick L. Hughes
Karl D. Burrer
Haynes and Boone, LLP
patrick.hughes@haynesboone.com
karl.burrer@haynesboone.com
Attorneys for **Chiron Financial Group, Inc. and SSG Advisors, LLC**

Floyd R. Hartley, Jr.
Allred Wilcox & Hartley PLLC
frhartley@awh-pllc.com
Attorneys for **Lendteq, LLC**

Kate H. Easterling
Joseph E. Bain
Edison McDowell & Hetherington LLP
kate.easterling@emhllp.com
joe.bain@emhllp.com
Attorneys for **Lendteq, LLC**

/s/ J. Robert Forshey
J. Robert Forshey

L:\BFORSHEY\Diverse Energy Systems, LLC #5759\Pleadings (Diverse BK Case) 15-34736 (TXSB)\Notice of Contingent Proposed Sale Order (1.15.16).docx

# EXHIBIT "A"

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | CHAPTER 11 CASES |
| | : | |
| DIVERSE ENERGY SYSTEMS, LLC | : | Case No. 15-34736 |
| | : | |
| SCRIBNER INDUSTRIES, INC. | : | Case No. 15-34737 |
| | : | |
| DIVERSE ENERGY SYSTEMS, LLC | : | Case No. 15-34738 |
| d/b/a LEAN TECHNOLOGIES, LLC | : | |
| | : | |
| ROULY, INC. | : | Case  No. 15-34739 |
| | : | |
| Debtors. | : | Jointly Administered Under |
| | : | Case No. 15-34736-H5-11 |
| | : | |

**ORDER AUTHORIZING (I) THE SALE OF CERTAIN OF
THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES AND OTHER INTERESTS EXCEPT FOR
CERTAIN ASSUMED LIABILITIES; (II) THE DEBTORS
TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[1] of Diverse Energy Systems, LLC, Diverse

Energy Systems, LLC d/b/a Lean Technologies, LLC, Scribner Industries, Inc. and Rouly, Inc.

(collectively, the "**Diverse Debtors**"), for entry of an order, pursuant to sections 105(a), 363,

365, 503 and 507 of the United States Bankruptcy Code (the "**Bankruptcy Code**") and

Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**"), authorizing and approving the following:

---

[1]    Unless indicated otherwise, capitalized terms used but not defined herein have the meanings ascribed to
them in the APA (as defined below).

1

(i)      the sale of the Acquired Assets (as defined below);

(ii)     the entry into, performance under and terms and conditions of the Asset Purchase Agreement, dated as of January [__], 2016 (collectively with all related agreements, amendments, documents or instruments and all exhibits, schedules and addenda to any of the foregoing, the "**APA**"), whereby the Diverse Debtors and ITS Engineered Systems, Inc. ("**ITS**" and together with the Diverse Debtors, the "**Sellers**") have agreed to sell, and Cimarron Acquisition Co. (the "**Purchaser**") has agreed to buy, certain of the Sellers' assets (specifically as set forth and defined in the APA, the "**Acquired Assets**"), free and clear of all claims, liens, encumbrances and other interests, except for certain permitted encumbrances (specifically as set forth and defined in the APA, the "**Permitted Encumbrances**") and where Sellers have agreed to transfer and the Purchaser has expressly agreed to assume certain of the Sellers' liabilities (specifically as set forth and defined in the APA, the "**Assumed Liabilities**") (collectively, and including all actions taken or required to be taken in connection with the implementation and consummation of the APA, the "**Transactions**");

(iii)    the assumption and assignment to the Purchaser of certain executory contracts and unexpired leases designated for assumption and assignment as Purchased Contracts in accordance with this Order and the APA (collectively, the "**Purchased Contracts**"); and

(iv)     other related relief;

and the Court having entered an order approving bid procedures and granting certain related relief on November 19, 2015 [Docket No. 212], as such order was subsequently amended by the Court on December 16, 2015 [Docket No. 265] and on January 13, 2016 [Docket No. 326] (together, the "**Bidding Procedures Order**"); and the Purchaser having submitted the highest and/or best offer for the Acquired Assets pursuant to the terms of the APA, a copy of which is attached hereto as **Exhibit A**; and the Court having conducted a hearing on the Motion on **[January 19, 2016]** (the "**Sale Hearing**") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered the Motion, the APA, the Bidding Procedures Order, the record of the hearing before the Court at which the Bidding Procedures Order was approved and all objections to the Transactions and the APA filed in accordance with the Bidding Procedures Order; and the appearance of all interested parties and all

2

responses and objections to the Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, including the evidence presented in support of the relief requested in the Motion at the Sale Hearing; and upon all of the proceedings conducted before the Court, and all objections and responses to the relief requested in the Motion having been heard and overruled, continued or resolved on the terms set forth in this Order, and it appearing that due notice of the Motion, the APA and the Bidding Procedures Order having been provided; and it appearing that the relief requested in the Motion is in the best interests of the Diverse Debtors, their estates, their creditors and all other parties in interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon,

**THE COURT EXPRESSLY FINDS AS FOLLOWS:[2]**

<u>**Jurisdiction, Venue and Final Order**</u>

A.      This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) (A), (N) and (O). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d) and 7062, and to the extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is

---

[2]      All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Motion are hereby incorporated to the extent not inconsistent herewith.

no just reason for delay in the implementation of this Order and expressly directs entry of this Order as set forth herein.

### Notice of the Transactions, the APA, the Sale Hearing and the Cure Costs

C.       On September 7, 2015 (the "**Petition Date**"), each of the Diverse Debtors commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  Since the Petition Date, the Diverse Debtors have continued in possession and management of their businesses and properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No creditors committee has been appointed in any of the Chapter 11 Cases.

D.       As evidenced by the affidavits of service and publication previously filed with this Court, and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing, the APA and the Transactions has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006 and 9014.  The Diverse Debtors have complied with all obligations to provide notice of the Motion, the Sale Hearing, the APA and the Transactions as required by the Bidding Procedures Order.  The aforementioned notices are good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Sale Hearing, the APA or the Transactions is or shall be required.

E.       A reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

F.       The Diverse Debtors have served a notice (as amended, modified or otherwise supplemented from time to time, the "**Contract Notice**") of the potential assumption and assignment of the Purchased Contracts and of the Cure Costs upon each non-Debtor counterparty to a Purchased Contract.  As evidenced by the affidavits of service and publication previously

4

filed with this Court, and based on the record at the Sale Hearing, the service and provision of the Contract Notice was good, sufficient and appropriate under the circumstances and no further notice is or shall be required in respect of assumption and assignment of the Purchased Contracts or establishing a Cure Cost for the respective Purchased Contracts.

G.      Non-Debtor counterparties to the Purchased Contracts have had an adequate opportunity to object to or to be heard regarding assumption and assignment of the applicable Purchased Contracts and the Cure Cost set forth in the Contract Notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from accepting performance by, or rendering performance to, the Purchaser for purposes of section 365(c)(1) of the Bankruptcy Code).  The deadline to file an objection to the assumption and assignment to the Purchaser of any Purchased Contract (a "**Contract Objection**") has expired, and to the extent any such party timely filed a Contract Objection, all such Contract Objections have been resolved, withdrawn, overruled, or continued to a later hearing by agreement of the parties.  To the extent that any such party did not timely file a Contract Objection by the Contract Objection deadline, such party is deemed to have consented to (i) the assumption and assignment of the Purchased Contracts pursuant to the terms of this Order; and (ii) the proposed Cure Cost set forth on the Contract Notice.

## Marketing Process

H.      As demonstrated by the evidence proffered or adduced at the Sale Hearing, the Sellers and their representatives have complied in all respects with the Bidding Procedures Order, as modified and supplemented.  The Sellers and their professionals have, under the circumstances, adequately and appropriately marketed the Acquired Assets.  The Sellers (i) provided potential purchasers, upon request, sufficient information to enable them to make an

5

informed judgment on whether to bid on the Acquired Assets and (ii) considered any bids submitted on or before the deadline established by the Court for the submission of bids.

I.      The Purchaser is the Successful Bidder for the Acquired Assets in accordance with the Bidding Procedures Order and pursuant to the terms of the APA and this Order.  The Purchaser and its representatives have complied in all respects with the Bidding Procedures Order, as modified and supplemented, and all other applicable orders of this Court in negotiating and entering into the APA, and the sale and the APA likewise comply with the Bidding Procedures Order and all other applicable orders of this Court.

### Highest or Otherwise Best Offer; Business Judgment

J.      The APA, including the form and total consideration to be realized by the Diverse Debtors under the APA, (i) constitutes the highest and best offer received by the Diverse Debtors for the Acquired Assets; (ii) is fair and reasonable; and (iii) is in the best interests of the Diverse Debtors, their estates, their creditors and all other parties in interest.

K.      The Diverse Debtors' determination that the consideration provided by the Purchaser under the APA constitutes the highest or otherwise best offer for the Acquired Assets constitutes a valid and sound exercise of the Diverse Debtors' business judgment.

L.      Consistent with their fiduciary duties, the Diverse Debtors have demonstrated good, sufficient and sound business reasons and justifications for entering into the Transactions and the performance of their obligations under the APA, including, but not limited to, the fact that (i) the consideration provided by the Purchaser under the APA will provide a greater recovery for the Diverse Debtors' estates than would be provided by any other available alternative, including a separate liquidation of the Acquired Assets; and (ii) unless the sale is concluded expeditiously as provided for in the Motion and pursuant to the APA, recoveries of creditors will be diminished.

## Good Faith; Arms' Length Sale

M.      The sales process engaged in by the Diverse Debtors and the Purchaser, including, without limitation, the Bidding Procedures set forth in the Bidding Procedures Order and the negotiation of the APA, was at arms' length, non-collusive, in good faith, and substantively and procedurally fair to all parties.

N.      The Diverse Debtors and the Purchaser and their respective representatives have complied, in good faith, in all respects with the Bidding Procedures Order.

O.      The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and are therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding.  None of the Diverse Debtors or the Purchaser has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code.

P.      The APA and the Transactions contemplated thereunder were proposed, negotiated and entered into by and among the Diverse Debtors and the Purchaser without collusion, and none of the Diverse Debtors or the Purchaser has engaged in any conduct that would cause or permit the APA or the Transactions to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

Q.      The form and total consideration to be realized by the Diverse Debtors under the APA constitutes fair value, fair, full and adequate consideration, reasonably equivalent value and reasonable market value for the Acquired Assets.

## Corporate Authority

R.      The Diverse Debtors (i) have full corporate or other power to execute, deliver and perform their obligations under the APA and all other Transactions contemplated thereby, and entry into the APA has been duly and validly authorized by all necessary corporate or similar

7

action; (ii) have all of the corporate or other power and authority necessary to consummate the Transactions contemplated by the APA; and (iii) have taken all actions necessary to authorize and approve the APA and the Transactions contemplated thereby.  No consents or approvals, other than those expressly provided for herein or in the APA, are required for the Diverse Debtors to consummate such Transactions.

### Section 363 Is Satisfied

S.      The Acquired Assets (other than the Acquired Assets owned by ITS) constitute property of the Diverse Debtors' estates and exclusive title thereto is presently vested in the Diverse Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

T.      The sale of all Acquired Assets to the Purchaser under the terms of the APA meets the applicable provisions of section 363(f) of the Bankruptcy Code such that the sale of the Acquired Assets will be free and clear of any and all Liens, and except as expressly provided in the APA with respect to Permitted Encumbrances and Assumed Liabilities, the (i) transfer of the Acquired Assets to the Purchaser and (ii) assumption and/or assignment of the Purchased Contracts to the Purchaser will be free and clear of all Liens and will not subject the Purchaser or any of the Purchaser's assets to any liability for any Liens whatsoever (including, without limitation, under any theory of equitable law, antitrust, setoff, or successor or transferee liability).  All holders of Liens who did not object, or withdrew their objections to the Transactions, are deemed to have consented to the Transactions pursuant to section 363(f)(2) of the Bankruptcy Code.  All holders of Liens are adequately protected — thus satisfying section 363(e) of the Bankruptcy Code — by either receiving a portion of the cash proceeds pursuant to paragraphs 11 and 12 of this Order or having their Liens, if any, attach to the remaining cash proceeds of the Transactions ultimately attributable to the property against or in which they assert a Lien or other specifically dedicated funds or assets of the estates on which

8

they have Liens, in the same order of priority and with the same validity, force and effect that such Lien holder had prior to the Transactions, subject to any rights, claims and defenses of the Diverse Debtors or their estates, as applicable, or as otherwise provided herein; provided, however, that setoff rights will be extinguished to the extent there is no longer mutuality after the consummation of the Transactions.

U.     The Purchaser would not have entered into the APA and would not consummate the Transactions, thus adversely affecting the Diverse Debtors, their estates, creditors, employees and other parties in interest, if the sale of the Acquired Assets was not free and clear of all Liens or if the Purchaser would, or in the future could, be liable for any Liens, including, without limitation and as applicable, certain liabilities that expressly are not assumed by the Purchaser as set forth in the APA or in this Order.  The Purchaser asserts that it will not consummate the Transactions unless the APA specifically provides, and this Court specifically orders, that none of the Purchaser, its assets or the Acquired Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any (i) Lien; or (ii) any successor or transferee liability for any of the Sellers other than the Permitted Encumbrances and Assumed Liabilities.

V.     The Purchaser is not a successor to the Sellers or their respective estates by reason of any theory of law or equity, and neither the Purchaser nor any of its affiliates shall assume or in any way be responsible for any liability or obligation of any of the Sellers or their respective estates, except as otherwise expressly provided in the APA or this Order.  The Purchaser is not a continuation of the Sellers or their respective estates and there is no continuity between the Purchaser and the Sellers.  The Purchaser is not holding itself out to the public as a continuation

9

of the Sellers or their respective estates and the Transactions do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Sellers.

W.     The transfer of the Acquired Assets to the Purchaser under the APA will be a legal, valid and effective transfer of all of the legal, equitable and beneficial right, title and interest in and to the Acquired Assets free and clear of all Liens (other than Permitted Encumbrances and Assumed Liabilities).  The transfer of the Acquired Assets to the Purchaser will vest the Purchaser with good and marketable title to the Acquired Assets.

X.     There is no legal or equitable reason to delay the Transactions.  The Transactions must be approved and consummated promptly in order to preserve the value of the Diverse Debtors' assets.  All factual predicates to the waiver of any stay of this Order under Bankruptcy Rules 6004(h) and 6006(d) have been satisfied.

Y.     The Diverse Debtors have demonstrated both (i) good, sufficient and sound business judgment, purposes and justifications; and (ii) compelling circumstances for the Transactions pursuant to section 363(b) of the Bankruptcy Code prior to, and outside of, a plan of reorganization in that, among other things, absent the immediate consummation of the Transactions, the value of the Diverse Debtors' assets will be harmed.  To maximize the value of the Acquired Assets, it is essential that the Transactions occur within the timeframe set forth in the APA.  Time is of the essence in consummating the Transactions.

Z.     Entry into the APA and consummation of the Transactions do not constitute a <u>sub rosa</u> chapter 11 plan.

### Assumption and Assignment of the Purchased Contracts

AA.     The assumption and assignment of the Purchased Contracts (as such Purchased Contracts may be amended, supplemented or otherwise modified prior to assumption and assignment without further order of the Court with the consent of the Diverse Debtors, the

10

contract counterparty and the Purchaser) that are designated for assumption and assignment pursuant to the terms of this Order and the APA is integral to the APA, does not constitute unfair discrimination, is in the best interests of the Diverse Debtors, their estates, their creditors and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Diverse Debtors.

BB.     The Debtors have met all requirements of section 365(b) of the Bankruptcy Code for each of the Purchased Contracts.  Except with respect to Disputed Cure Costs as provided in paragraph 2 herein below, the Purchaser, pursuant to the APA, has (a) cured and/or provided adequate assurance of cure of any default existing prior to the Closing under all of the Purchased Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; and (b) provided compensation or adequate assurance of compensation to any counterparty for actual pecuniary loss to such party resulting from a default prior to the Closing under any of the Purchased Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.  Each of the Purchased Contracts is free and clear of all Liens against the Purchaser.

CC.     The Purchaser has demonstrated adequate assurance of its future performance under the relevant Purchased Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  Pursuant to section 365(f) of the Bankruptcy Code, the Purchased Contracts to be assumed and assigned under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchaser notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

DD.     No monetary or non-monetary defaults exist in the Diverse Debtors' performance under the Purchased Contracts as of the date of this Order other than the failure to pay amounts

11

equal to the Cure Costs or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code.  In accordance with the terms set forth in the APA and this Order, the Purchaser shall pay the Cure Costs, if any, for each of the Purchased Contracts.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

<u>**General Provisions**</u>

1.      The Motion is granted to the extent provided herein.

2.      Any objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled on the merits and denied with prejudice; <u>provided</u>, <u>however</u>, that, subject to paragraph __of this Order, unresolved objections to the proposed disputed Cure Costs (the "<u>**Disputed Cure Costs**</u>") shall be adjourned and heard by the Court on _____, 2016 at _:___.m. (Central Time) or at such other date and time as may be fixed by this Court (the "<u>**Cure Hearing**</u>") to the extent not resolved prior to the Cure Hearing.

3.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

<u>**Approval of the APA**</u>

4.      The APA, all the terms and conditions thereof, and consummation of all of the Transactions contemplated therein, are authorized and approved in all respects pursuant to section 363(b) of the Bankruptcy Code.

12

5.     The Diverse Debtors and their respective chief reorganization officers, employees and agents are authorized and directed to (a) take any and all actions necessary, appropriate or reasonably requested by the Purchaser to perform, consummate, implement and close the Transactions, including, without limitation, (i) the sale of all Acquired Assets to the Purchaser in accordance with the terms and conditions set forth in the APA and this Order; (ii) the performance of their obligations under the APA and related agreements; and (iii) executing, acknowledging and delivering such deeds, assignments, conveyances and other assurance, documents and instruments of transfer and taking any action for purposes of assigning, transferring, granting, conveying and confirming to the Purchaser, or reducing to possession, the Acquired Assets; and (b) to assume and assign any and all Purchased Contracts.

### Sale and Transfer Free and Clear of Liens

6.     Except as otherwise expressly provided in the APA and the terms of this Order with respect to the Permitted Encumbrances and the Assumed Liabilities, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Acquired Assets shall be sold free and clear of all Liens, whether arising prior to or subsequent to the commencement of the Sellers' chapter 11 cases, and whether imposed by agreement, law, equity or otherwise.  All such Liens shall attach to the remaining cash proceeds of the Transactions following the payments to Coyote Capital Management, LLC ("**Coyote**") and Alerus Financial, N.A. ("**Alerus**") pursuant to paragraphs 11 and 12 of this Order, with the same validity, force, priority and effect which they now have as against the Acquired Assets, subject to any claims and defenses the Sellers may possess with respect thereto.

7.     At Closing, all of the Diverse Debtors' right, title and interest in and to, and possession of, the Acquired Assets shall be immediately vested in the Purchaser, pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code free and clear of any and all

13

Liens, except for Permitted Encumbrances and Assumed Liabilities. Such transfer shall constitute a legal, valid, binding and effective transfer of, and shall vest the Purchaser with good and marketable title to, the Acquired Assets. All person or entities, presently or on or after the Closing, in possession of some or all of the Acquired Assets are directed to surrender possession of the Acquired Assets to the Purchaser or its designees on the Closing or at such time thereafter as the Purchaser may request.

8. This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is hereby authorized and directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Transactions contemplated by the APA. The Acquired Assets are sold free and clear of any reclamation rights.

9. Except as otherwise expressly provided in the APA and this Order with respect to Permitted Encumbrances and Assumed Liabilities, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants and other creditors holding Liens against the Sellers or the Acquired Assets arising under or out of, in connection with, or in any way relating to, the Sellers, the Sellers' predecessors or affiliates, the Acquired Assets, the ownership, sale or

14

operation of the Acquired Assets and the Sellers' business prior to Closing or the transfer of the Acquired Assets to the Purchaser, are hereby forever barred, estopped and permanently enjoined from asserting such Liens against the Purchaser, its successors or assigns, its property or the Acquired Assets.  Following the Closing, no holder of any Lien shall interfere with the Purchaser's title to or use and enjoyment of the Acquired Assets based on or related to any such Lien, or based on any action the Sellers may take in their chapter 11 cases.

10.     If any person or entity that has filed financing statements, mortgages, mechanic's Liens, *lis pendens* or other documents or agreements evidencing Liens against or in the Acquired Assets shall not have delivered to the Diverse Debtors prior to the Closing of the Transactions, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens (other than the Permitted Encumbrances and Assumed Liabilities) that the person or entity has with respect to the Acquired Assets, (a) the Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all such Liens against the Purchaser and the applicable Acquired Assets; and (b) the Purchaser may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction and releases of all such Liens with respect to the Acquired Assets.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office.  Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Acquired Assets free and clear of Liens shall be self-executing, and none of the Sellers nor the Purchaser shall be required to execute or file releases, termination

15

statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Order.

### Distribution of Sale Proceeds

11.     From the cash proceeds at the Closing of the Transactions, the Sellers shall pay to Coyote the sum of $_____ in full and final satisfaction of any and all liens, claims and/or encumbrances of any kind held or possessed by Coyote against the Sellers and their respective bankruptcy estates.

12.     From the cash proceeds at the Closing of the Transactions, the Sellers shall pay to Alerus the sum of $_____ in full and final satisfaction of any and all liens, claims and/or encumbrances of any kind held or possessed by Alerus against the Sellers and their respective bankruptcy estates, except Alerus reserves any pre-petition unsecured non-priority claim that it may hold against the Diverse Debtors.  After the payments at Closing of the Transactions to Coyote and Alerus, the Sellers shall retain the remainder of the cash sale proceeds from the Transactions pending further application and order of this Court, after notice and opportunity for a hearing.  Coyote and Alerus shall only receive one satisfaction from the Transactions notwithstanding the entry of similar orders in the Sellers' bankruptcy cases.

13.     ITS shall pay to SSG Advisors, LLC and Chiron Financial Group, Inc. (collectively "**SSG**") the sum of $93,750 from the cash proceeds at the Closing from the Transactions in partial satisfaction of the fees and expenses owing to SSG as authorized by prior order of this Court.  The Diverse Debtors shall pay to SSG the sum of $156,250 from the cash proceeds at the Closing from the Transactions in partial satisfaction of the fees and expenses owing to SSG as authorized by prior order of this Court.  Potential further payments may be made to SSG from the sale proceeds of the Transactions pursuant to prior order of the Court.

## No Successor or Transferee Liability

14.     The Purchaser shall not be deemed, as a result of any action taken in connection with the APA, the consummation of the Transactions contemplated by the APA, or the transfer or operation of the Acquired Assets to (a) be a legal successor, or otherwise be deemed a successor to the Sellers (other than with respect to any obligations as an assignee under the Purchased Contracts arising after the Closing); (b) have, *de facto* or otherwise, merged with or into the Sellers; or (c) be an alter ego or a mere continuation or substantial continuation of the Sellers or the enterprise(s) of the Sellers, including, without limitation, within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act (**"COBRA"**), WARN (defined below), CERCLA (defined below), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act, 29 U.S.C. § 151, *et seq.*, environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, any liabilities, debts or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Sellers' liability under such law, rule or regulation or doctrine.

15.     Other than as expressly set forth in the APA and this Order with respect to Permitted Encumbrances and Assumed Liabilities, the Purchaser shall not have any responsibility for (a) any liability or other obligation of the Debtors or related to the Acquired

Assets or (b) any Claims against the Debtors or any of their predecessors or affiliates.  The Purchaser shall have no liability whatsoever with respect to the Sellers' (or their predecessors' or affiliates') respective businesses or operations or any of the Sellers' (or their predecessors' or affiliates') obligations (as described herein, "**Successor or Transferee Liability**") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Acquired Assets prior to the Closing.  The Purchaser shall have no liability or obligation under the WARN Act (29 U.S.C. §§ 2101 et seq.) ("**WARN**") or the Comprehensive Environmental Response Compensation and Liability Act ("**CERCLA**"), or any foreign, federal, state or local labor, employment, or environmental law whether of similar import or otherwise by virtue of the Purchaser's purchase of the Acquired Assets or assumption of the Assumed Liabilities by the Purchaser.

### Good Faith; Arms' Length Sale

16.     The APA has been negotiated and executed, and the Transactions contemplated by the APA are and have been undertaken, by Sellers, the Purchaser and their respective representatives at arms' length, without collusion and in "good faith," as that term is used in section 363(m) of the Bankruptcy Code.  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the Transactions (including the assumption and assignment of the Purchased Contracts), unless such authorization and consummation of the sale are duly and properly stayed pending such appeal.

18

The Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, are entitled to the full protections of section 363(m) of the Bankruptcy Code.

17.     None of the Sellers or the Purchaser has engaged in any conduct that would cause or permit the APA or the Transactions to be avoided, or damages or costs, to be imposed, under section 363(n) of the Bankruptcy Code.  The consideration provided by the Purchaser for the Acquired Assets under the APA is fair and reasonable, and the Transactions may not be avoided under section 363(n) of the Bankruptcy Code.

### Assumption and Assignment of Purchased Contracts

18.     Pursuant to sections 105(a) and 365 of the Bankruptcy Code, the Diverse Debtors are authorized and directed to assume and assign to the Purchaser each of the Purchased Contracts upon the Closing of the Transactions, free and clear of all Liens (other than the Permitted Encumbrances and the Assumed Liabilities).   The payment of the Cure Costs by the Purchaser under the APA and this Order (a) cures all monetary defaults existing thereunder as of the Closing Date; (b) compensates the applicable non-Debtor counterparties for any actual pecuniary loss resulting from such default; and (c) together with the assumption of the Purchased Contracts by the Diverse Debtors and the assignment of the Purchased Contracts to the Purchaser, constitutes adequate assurance of future performance thereof.

19.     To the extent that any counterparty to a Purchased Contract did not timely file a Contract Objection by the Contract Objection deadline, such counterparty is deemed to have consented to (i) the assumption and assignment of Purchased Contracts pursuant to the terms of this Order; and (ii) the proposed Cure Cost set forth on the Contract Notice.

20.     Any provision in any Purchased Contract that prohibits or conditions the assignment of such Purchased Contract or allows the non-Debtor counterparty to such Purchased Contract to impose any penalty, fee, rent increase, profit sharing arrangement or other condition

19

on renewal or extension, or to modify any term or condition upon the assignment of such Purchased Contract, constitutes an unenforceable anti-assignment provision that is void and of no force and effect in connection with the Transactions.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Diverse Debtors and assignment to the Purchaser of the Purchased Contracts have been satisfied.  Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Diverse Debtors under the Purchased Contracts, and such Purchased Contracts shall remain in full force and effect for the benefit of the Purchaser.

21.     Upon the Closing, the Purchaser shall be deemed to be substituted for the Diverse Debtors as a party to the applicable Purchased Contracts, and the Diverse Debtors and their estates shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Purchased Contracts occurring after such assignment.

22.     Each non-Debtor counterparty to a Purchased Contract is forever barred, estopped, and permanently enjoined from asserting against the Diverse Debtors or the Purchaser or their respective property (including, without limitation, the Acquired Assets) in connection with this transaction (i) any assignment fee, acceleration, default, breach or claim or pecuniary loss, or condition to assignment existing, arising or accruing as of the Closing Date or arising by reason of the Closing, including any breach related to or arising out of change-in-control in such Purchased Contracts, or any purported written or oral modification to the Purchased Contracts; or (ii) any claim, counterclaim, defense, breach, default, condition, setoff or other claim asserted or capable of being asserted against the Diverse Debtors existing as of the Closing Date or arising by reason of the Closing, except for the Permitted Encumbrances and the Assumed Liabilities.

20

23.     Other than the Purchased Contracts or as otherwise expressly set forth in the APA, the Purchaser assumed none of the Sellers' other contracts or leases and shall have no liability whatsoever thereunder.

24.     Nothing in the Motion or this Order shall be deemed or construed as a waiver of any claims or causes of action that the Diverse Debtors or the Purchaser have or may have against a non-Debtor counterparty to any Purchased Contract, whether or not such claims arise under, are related to the assumption of or are independent of the Purchased Contracts.

## Other Provisions

25.     The requirements set forth in Bankruptcy Rules 6003(b), 6004 and 6006 have been satisfied or otherwise deemed waived.

26.     The Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to give any notice permitted by the APA or to enforce any of its remedies under the APA or any other sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence; provided however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

27.     The provisions of this Order and the APA are non-severable and mutually dependent.

28.     The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court; provided that any such modification, amendment or supplement does not have a material adverse effect on the Diverse Debtors' estates.

29.     The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments

21

thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Diverse Debtors are a party or which has been assigned by the Diverse Debtors to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Transactions.  This Court retains jurisdiction to compel delivery of the Acquired Assets, to protect the Purchaser and its assets, including the Acquired Assets, against any Liens and Successor and Transferee Liability and to enter orders, as appropriate, pursuant to sections 105(a), 363 or 365 (or other applicable provisions) of the Bankruptcy Code necessary to transfer the Acquired Assets and the Purchased Contracts to the Purchaser.

30.     As provided by Bankruptcy Rules 7062 and 9014, the terms and conditions of this Order shall be effective immediately upon entry and shall not be subject to the stay provisions contained in Bankruptcy Rules 6004(h) and 6006(d) or any similar rule that would delay the effectiveness of this Order.  Time is of the essence in closing the sale and the Diverse Debtors and Purchaser intend to close the sale and consummate the Transactions as soon as possible. Therefore, any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay or risk their appeal being foreclosed as moot.

31.     This Order and the APA shall be binding in all respects upon all creditors of (whether known or unknown), and holders of equity interests in, any Seller, any holders of Liens in, against or on all or any portion of the Acquired Assets, all non-Debtor counterparties to the Purchased Contracts, all successors and assigns of the Purchaser, the Sellers and their affiliates and subsidiaries and any subsequent trustee appointed in these chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code, and shall not be subject to rejection. Nothing contained in any chapter 11 plan confirmed in these chapter 11 cases, any order confirming any such chapter 11 plan or any order approving wind-down or dismissal of these

NAI-1500763202v2

chapter 11 cases or any subsequent chapter 7 cases shall conflict with or derogate from the provisions of the APA or this Order, and to the extent of any conflict or derogation between this Order or the APA and such future plan or order, the terms of this Order and the APA shall control.

32.     To the extent any provisions of this Order conflict with, or are otherwise inconsistent with, the terms and conditions of the APA or the Bidding Procedures Order, this Order shall govern and control.

Dated:  _____, 2016
          Houston, Texas

_____
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT A

# Asset Purchase Agreement

NAI-1500763202v2

# EXHIBIT "B"

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | : | |
| In re: | : | CHAPTER 11 CASES |
| | : | |
| DIVERSE ENERGY SYSTEMS, LLC | : | Case No. 15-34736 |
| | : | |
| SCRIBNER INDUSTRIES, INC. | : | Case No. 15-34737 |
| | : | |
| DIVERSE ENERGY SYSTEMS, LLC | : | Case No. 15-34738 |
| d/b/a LEAN TECHNOLOGIES, LLC | : | |
| | : | |
| ROULY, INC. | : | Case  No. 15-34739 |
| | : | |
| Debtors. | : | Jointly Administered Under |
| | : | Case No. 15-34736-H5-11 |
| | : | |

## ORDER AUTHORIZING (I) THE SALE OF CERTAIN OF
## THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,
## ENCUMBRANCES AND OTHER INTERESTS EXCEPT FOR
## CERTAIN ASSUMED LIABILITIES; (II) THE DEBTORS
## TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[1] of Diverse Energy Systems, LLC, Diverse

Energy Systems, LLC d/b/a Lean Technologies, LLC, Scribner Industries, Inc. and Rouly, Inc.

(collectively, the "**Diverse Debtors**"), for entry of an order, pursuant to sections 105(a), 363,

365, 503 and 507 of the United States Bankruptcy Code (the "**Bankruptcy Code**") and

Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**"), authorizing and approving the following:

---

[1]     Unless indicated otherwise, capitalized terms used but not defined herein have the meanings ascribed to them in the APA (as defined below).

1

(i)       the sale of the Acquired Assets (as defined below);

(ii)      the entry into, performance under and terms and conditions of the Asset Purchase Agreement, dated as of January [__], 2016 (collectively with all related agreements, amendments, documents or instruments and all exhibits, schedules and addenda to any of the foregoing, the "**APA**"), whereby the Diverse Debtors and ITS Engineered Systems, Inc. ("**ITS**" and together with the Diverse Debtors, the "**Sellers**") have agreed to sell, and Cimarron Acquisition Co. (the "**Purchaser**") has agreed to buy, certain of the Sellers' assets (specifically as set forth and defined in the APA, the "**Acquired Assets**"), free and clear of all claims, liens, encumbrances and other interests, except for certain permitted encumbrances (specifically as set forth and defined in the APA, the "**Permitted Encumbrances**") and where Sellers have agreed to transfer and the Purchaser has expressly agreed to assume certain of the Sellers' liabilities (specifically as set forth and defined in the APA, the "**Assumed Liabilities**") (collectively, and including all actions taken or required to be taken in connection with the implementation and consummation of the APA, the "**Transactions**");

(iii)     the assumption and assignment to the Purchaser of certain executory contracts and unexpired leases designated for assumption and assignment as Purchased Contracts in accordance with this Order and the APA (collectively, the "**Purchased Contracts**"); and

(iv)     other related relief;

and the Court having entered an order approving bid procedures and granting certain related relief on November 19, 2015 [Docket No. 212], as such order was subsequently amended by the Court on December 16, 2015 [Docket No. 265] and on January 13, 2016 [Docket No. 326] (together, the "**Bidding Procedures Order**"); and the Purchaser having submitted the highest and/or best offer for the Acquired Assets pursuant to the terms of the APA, a copy of which is attached hereto as **Exhibit A**; and the Court having conducted a hearing on the Motion on **[January 19, 2016]** (the "**Sale Hearing**") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered the Motion, the APA, the Bidding Procedures Order, the record of the hearing before the Court at which the Bidding Procedures Order was approved and all objections to the Transactions and the APA filed in accordance with the Bidding Procedures Order; and the appearance of all interested parties and all

2

responses and objections to the Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, including the evidence presented in support of the relief requested in the Motion at the Sale Hearing; and upon all of the proceedings conducted before the Court, and all objections and responses to the relief requested in the Motion having been heard and overruled, continued or resolved on the terms set forth in this Order, and it appearing that due notice of the Motion, the APA and the Bidding Procedures Order having been provided; and it appearing that the relief requested in the Motion is in the best interests of the Diverse Debtors, their estates, their creditors and all other parties in interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon,

**THE COURT EXPRESSLY FINDS AS FOLLOWS:[2]**

<u>**Jurisdiction, Venue and Final Order**</u>

A.      This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) (A), (N) and (O). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d) and 7062, and to the extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is

---

[2]      All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Motion are hereby incorporated to the extent not inconsistent herewith.

NAI-1500763202v2

no just reason for delay in the implementation of this Order and expressly directs entry of this Order as set forth herein.

### Notice of the Transactions, the APA, the Sale Hearing and the Cure Costs

C.      On September 7, 2015 (the "**Petition Date**"), each of the Diverse Debtors commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  Since the Petition Date, the Diverse Debtors have continued in possession and management of their businesses and properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No creditors committee has been appointed in any of the Chapter 11 Cases.

D.      As evidenced by the affidavits of service and publication previously filed with this Court, and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing, the APA and the Transactions has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006 and 9014.  The Diverse Debtors have complied with all obligations to provide notice of the Motion, the Sale Hearing, the APA and the Transactions as required by the Bidding Procedures Order.  The aforementioned notices are good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Sale Hearing, the APA or the Transactions is or shall be required.

E.      A reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

F.      The Diverse Debtors have served a notice (as amended, modified or otherwise supplemented from time to time, the "**Contract Notice**") of the potential assumption and assignment of the Purchased Contracts and of the Cure Costs upon each non-Debtor counterparty to a Purchased Contract.  As evidenced by the affidavits of service and publication previously

4

filed with this Court, and based on the record at the Sale Hearing, the service and provision of the Contract Notice was good, sufficient and appropriate under the circumstances and no further notice is or shall be required in respect of assumption and assignment of the Purchased Contracts or establishing a Cure Cost for the respective Purchased Contracts.

G.      Non-Debtor counterparties to the Purchased Contracts have had an adequate opportunity to object to or to be heard regarding assumption and assignment of the applicable Purchased Contracts and the Cure Cost set forth in the Contract Notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from accepting performance by, or rendering performance to, the Purchaser for purposes of section 365(c)(1) of the Bankruptcy Code).  The deadline to file an objection to the assumption and assignment to the Purchaser of any Purchased Contract (a "**Contract Objection**") has expired, and to the extent any such party timely filed a Contract Objection, all such Contract Objections have been resolved, withdrawn, overruled, or continued to a later hearing by agreement of the parties.  To the extent that any such party did not timely file a Contract Objection by the Contract Objection deadline, such party is deemed to have consented to (i) the assumption and assignment of the Purchased Contracts pursuant to the terms of this Order; and (ii) the proposed Cure Cost set forth on the Contract Notice.

## Marketing Process

H.      As demonstrated by the evidence proffered or adduced at the Sale Hearing, the Sellers and their representatives have complied in all respects with the Bidding Procedures Order, as modified and supplemented.  The Sellers and their professionals have, under the circumstances, adequately and appropriately marketed the Acquired Assets.  The Sellers (i) provided potential purchasers, upon request, sufficient information to enable them to make an

5

informed judgment on whether to bid on the Acquired Assets and (ii) considered any bids submitted on or before the deadline established by the Court for the submission of bids.

I.      The Purchaser is the Successful Bidder for the Acquired Assets in accordance with the Bidding Procedures Order and pursuant to the terms of the APA and this Order.  The Purchaser and its representatives have complied in all respects with the Bidding Procedures Order, as modified and supplemented, and all other applicable orders of this Court in negotiating and entering into the APA, and the sale and the APA likewise comply with the Bidding Procedures Order and all other applicable orders of this Court.

### Highest or Otherwise Best Offer; Business Judgment

J.      The APA, including the form and total consideration to be realized by the Diverse Debtors under the APA, (i) constitutes the highest and best offer received by the Diverse Debtors for the Acquired Assets; (ii) is fair and reasonable; and (iii) is in the best interests of the Diverse Debtors, their estates, their creditors and all other parties in interest.

K.      The Diverse Debtors' determination that the consideration provided by the Purchaser under the APA constitutes the highest or otherwise best offer for the Acquired Assets constitutes a valid and sound exercise of the Diverse Debtors' business judgment.

L.      Consistent with their fiduciary duties, the Diverse Debtors have demonstrated good, sufficient and sound business reasons and justifications for entering into the Transactions and the performance of their obligations under the APA, including, but not limited to, the fact that (i) the consideration provided by the Purchaser under the APA will provide a greater recovery for the Diverse Debtors' estates than would be provided by any other available alternative, including a separate liquidation of the Acquired Assets; and (ii) unless the sale is concluded expeditiously as provided for in the Motion and pursuant to the APA, recoveries of creditors will be diminished.

6

**Good Faith; Arms' Length Sale**

M.     The sales process engaged in by the Diverse Debtors and the Purchaser, including, without limitation, the Bidding Procedures set forth in the Bidding Procedures Order and the negotiation of the APA, was at arms' length, non-collusive, in good faith, and substantively and procedurally fair to all parties.

N.     The Diverse Debtors and the Purchaser and their respective representatives have complied, in good faith, in all respects with the Bidding Procedures Order.

O.     The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and are therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding.  None of the Diverse Debtors or the Purchaser has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code.

P.     The APA and the Transactions contemplated thereunder were proposed, negotiated and entered into by and among the Diverse Debtors and the Purchaser without collusion, and none of the Diverse Debtors or the Purchaser has engaged in any conduct that would cause or permit the APA or the Transactions to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

Q.     The form and total consideration to be realized by the Diverse Debtors under the APA constitutes fair value, fair, full and adequate consideration, reasonably equivalent value and reasonable market value for the Acquired Assets.

**Corporate Authority**

R.     The Diverse Debtors (i) have full corporate or other power to execute, deliver and perform their obligations under the APA and all other Transactions contemplated thereby, and entry into the APA has been duly and validly authorized by all necessary corporate or similar

7

action; (ii) have all of the corporate or other power and authority necessary to consummate the Transactions contemplated by the APA; and (iii) have taken all actions necessary to authorize and approve the APA and the Transactions contemplated thereby.  No consents or approvals, other than those expressly provided for herein or in the APA, are required for the Diverse Debtors to consummate such Transactions.

## Section 363 Is Satisfied

S.       The Acquired Assets (other than the Acquired Assets owned by ITS) constitute property of the Diverse Debtors' estates and exclusive title thereto is presently vested in the Diverse Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

T.       The sale of all Acquired Assets to the Purchaser under the terms of the APA meets the applicable provisions of section 363(f) of the Bankruptcy Code such that the sale of the Acquired Assets will be free and clear of any and all Liens, and except as expressly provided in the APA with respect to Permitted Encumbrances and Assumed Liabilities, the (i) transfer of the Acquired Assets to the Purchaser and (ii) assumption and/or assignment of the Purchased Contracts to the Purchaser will be free and clear of all Liens and will not subject the Purchaser or any of the Purchaser's assets to any liability for any Liens whatsoever (including, without limitation, under any theory of equitable law, antitrust, setoff, or successor or transferee liability).  All holders of Liens who did not object, or withdrew their objections to the Transactions, are deemed to have consented to the Transactions pursuant to section 363(f)(2) of the Bankruptcy Code.  All holders of Liens are adequately protected — thus satisfying section 363(e) of the Bankruptcy Code — by either receiving a portion of the cash proceeds pursuant to paragraphs 11 and 12 of this Order or having their Liens, if any, attach to the remaining cash proceeds of the Transactions ultimately attributable to the property against or in which they assert a Lien or other specifically dedicated funds or assets of the estates on which

8

they have Liens, in the same order of priority and with the same validity, force and effect that such Lien holder had prior to the Transactions, subject to any rights, claims and defenses of the Diverse Debtors or their estates, as applicable, or as otherwise provided herein; provided, however, that setoff rights will be extinguished to the extent there is no longer mutuality after the consummation of the Transactions.

U.      The Purchaser would not have entered into the APA and would not consummate the Transactions, thus adversely affecting the Diverse Debtors, their estates, creditors, employees and other parties in interest, if the sale of the Acquired Assets was not free and clear of all Liens or if the Purchaser would, or in the future could, be liable for any Liens, including, without limitation and as applicable, certain liabilities that expressly are not assumed by the Purchaser as set forth in the APA or in this Order.  The Purchaser asserts that it will not consummate the Transactions unless the APA specifically provides, and this Court specifically orders, that none of the Purchaser, its assets or the Acquired Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any (i) Lien; or (ii) any successor or transferee liability for any of the Sellers other than the Permitted Encumbrances and Assumed Liabilities.

V.      The Purchaser is not a successor to the Sellers or their respective estates by reason of any theory of law or equity, and neither the Purchaser nor any of its affiliates shall assume or in any way be responsible for any liability or obligation of any of the Sellers or their respective estates, except as otherwise expressly provided in the APA or this Order.  The Purchaser is not a continuation of the Sellers or their respective estates and there is no continuity between the Purchaser and the Sellers.  The Purchaser is not holding itself out to the public as a continuation

9

of the Sellers or their respective estates and the Transactions do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Sellers.

W.    The transfer of the Acquired Assets to the Purchaser under the APA will be a legal, valid and effective transfer of all of the legal, equitable and beneficial right, title and interest in and to the Acquired Assets free and clear of all Liens (other than Permitted Encumbrances and Assumed Liabilities).  The transfer of the Acquired Assets to the Purchaser will vest the Purchaser with good and marketable title to the Acquired Assets.

X.    There is no legal or equitable reason to delay the Transactions.  The Transactions must be approved and consummated promptly in order to preserve the value of the Diverse Debtors' assets.  All factual predicates to the waiver of any stay of this Order under Bankruptcy Rules 6004(h) and 6006(d) have been satisfied.

Y.    The Diverse Debtors have demonstrated both (i) good, sufficient and sound business judgment, purposes and justifications; and (ii) compelling circumstances for the Transactions pursuant to section 363(b) of the Bankruptcy Code prior to, and outside of, a plan of reorganization in that, among other things, absent the immediate consummation of the Transactions, the value of the Diverse Debtors' assets will be harmed.  To maximize the value of the Acquired Assets, it is essential that the Transactions occur within the timeframe set forth in the APA.  Time is of the essence in consummating the Transactions.

Z.    Entry into the APA and consummation of the Transactions do not constitute a <u>sub rosa</u> chapter 11 plan.

### Assumption and Assignment of the Purchased Contracts

AA.    The assumption and assignment of the Purchased Contracts (as such Purchased Contracts may be amended, supplemented or otherwise modified prior to assumption and assignment without further order of the Court with the consent of the Diverse Debtors, the

contract counterparty and the Purchaser) that are designated for assumption and assignment pursuant to the terms of this Order and the APA is integral to the APA, does not constitute unfair discrimination, is in the best interests of the Diverse Debtors, their estates, their creditors and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Diverse Debtors.

BB.    The Debtors have met all requirements of section 365(b) of the Bankruptcy Code for each of the Purchased Contracts.  Except with respect to Disputed Cure Costs as provided in paragraph 2 herein below, the Purchaser, pursuant to the APA, has (a) cured and/or provided adequate assurance of cure of any default existing prior to the Closing under all of the Purchased Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; and (b) provided compensation or adequate assurance of compensation to any counterparty for actual pecuniary loss to such party resulting from a default prior to the Closing under any of the Purchased Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.  Each of the Purchased Contracts is free and clear of all Liens against the Purchaser.

CC.    The Purchaser has demonstrated adequate assurance of its future performance under the relevant Purchased Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  Pursuant to section 365(f) of the Bankruptcy Code, the Purchased Contracts to be assumed and assigned under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchaser notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

DD.    No monetary or non-monetary defaults exist in the Diverse Debtors' performance under the Purchased Contracts as of the date of this Order other than the failure to pay amounts

11

equal to the Cure Costs or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code.  In accordance with the terms set forth in the APA and this Order, the Purchaser shall pay the Cure Costs, if any, for each of the Purchased Contracts.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

### General Provisions

1.      The Motion is granted to the extent provided herein.

2.      Any objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled on the merits and denied with prejudice; provided, however, that, subject to paragraph __of this Order, unresolved objections to the proposed disputed Cure Costs (the "**Disputed Cure Costs**") shall be adjourned and heard by the Court on _____, 2016 at _:___.m. (Central Time) or at such other date and time as may be fixed by this Court (the "**Cure Hearing**") to the extent not resolved prior to the Cure Hearing.

3.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

### Approval of the APA

4.      The APA, all the terms and conditions thereof, and consummation of all of the Transactions contemplated therein, are authorized and approved in all respects pursuant to section 363(b) of the Bankruptcy Code.

12

5.      The Diverse Debtors and their respective chief reorganization officers, employees and agents are authorized and directed to (a) take any and all actions necessary, appropriate or reasonably requested by the Purchaser to perform, consummate, implement and close the Transactions, including, without limitation, (i) the sale of all Acquired Assets to the Purchaser in accordance with the terms and conditions set forth in the APA and this Order; (ii) the performance of their obligations under the APA and related agreements; and (iii) executing, acknowledging and delivering such deeds, assignments, conveyances and other assurance, documents and instruments of transfer and taking any action for purposes of assigning, transferring, granting, conveying and confirming to the Purchaser, or reducing to possession, the Acquired Assets; and (b) to assume and assign any and all Purchased Contracts.

## Sale and Transfer Free and Clear of Liens

6.      Except as otherwise expressly provided in the APA and the terms of this Order with respect to the Permitted Encumbrances and the Assumed Liabilities, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Acquired Assets shall be sold free and clear of all Liens, whether arising prior to or subsequent to the commencement of the Sellers' chapter 11 cases, and whether imposed by agreement, law, equity or otherwise.  All such Liens shall attach to the remaining cash proceeds of the Transactions following the payments to Coyote Capital Management, LLC ("**Coyote**") and Alerus Financial, N.A. ("**Alerus**") pursuant to paragraphs 11 and 12 of this Order, with the same validity, force, priority and effect which they now have as against the Acquired Assets, subject to any claims and defenses the Sellers may possess with respect thereto.

7.      At Closing, all of the Diverse Debtors' right, title and interest in and to, and possession of, the Acquired Assets shall be immediately vested in the Purchaser, pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code free and clear of any and all

13

Liens, except for Permitted Encumbrances and Assumed Liabilities.  Such transfer shall constitute a legal, valid, binding and effective transfer of, and shall vest the Purchaser with good and marketable title to, the Acquired Assets.  All person or entities, presently or on or after the Closing, in possession of some or all of the Acquired Assets are directed to surrender possession of the Acquired Assets to the Purchaser or its designees on the Closing or at such time thereafter as the Purchaser may request.

8.     This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is hereby authorized and directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Transactions contemplated by the APA.  The Acquired Assets are sold free and clear of any reclamation rights.

9.     Except as otherwise expressly provided in the APA and this Order with respect to Permitted Encumbrances and Assumed Liabilities, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants and other creditors holding Liens against the Sellers or the Acquired Assets arising under or out of, in connection with, or in any way relating to, the Sellers, the Sellers' predecessors or affiliates, the Acquired Assets, the ownership, sale or

14

operation of the Acquired Assets and the Sellers' business prior to Closing or the transfer of the Acquired Assets to the Purchaser, are hereby forever barred, estopped and permanently enjoined from asserting such Liens against the Purchaser, its successors or assigns, its property or the Acquired Assets. Following the Closing, no holder of any Lien shall interfere with the Purchaser's title to or use and enjoyment of the Acquired Assets based on or related to any such Lien, or based on any action the Sellers may take in their chapter 11 cases.

10.     If any person or entity that has filed financing statements, mortgages, mechanic's Liens, *lis pendens* or other documents or agreements evidencing Liens against or in the Acquired Assets shall not have delivered to the Diverse Debtors prior to the Closing of the Transactions, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens (other than the Permitted Encumbrances and Assumed Liabilities) that the person or entity has with respect to the Acquired Assets, (a) the Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all such Liens against the Purchaser and the applicable Acquired Assets; and (b) the Purchaser may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction and releases of all such Liens with respect to the Acquired Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office. Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Acquired Assets free and clear of Liens shall be self-executing, and none of the Sellers nor the Purchaser shall be required to execute or file releases, termination

15

statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Order.

### Distribution of Sale Proceeds

11.     From the cash proceeds at the Closing of the Transactions, the Sellers shall pay to Coyote the sum of $_____ in full and final satisfaction of any and all liens, claims and/or encumbrances of any kind held or possessed by Coyote against the Sellers and their respective bankruptcy estates.

12.     From the cash proceeds at the Closing of the Transactions, the Sellers shall pay to Alerus the sum of $_____ in full and final satisfaction of any and all liens, claims and/or encumbrances of any kind held or possessed by Alerus against the Sellers and their respective bankruptcy estates, except Alerus reserves any pre-petition unsecured non-priority claim that it may hold against the Diverse Debtors.  After the payments at Closing of the Transactions to Coyote and Alerus, the Sellers shall retain the remainder of the cash sale proceeds from the Transactions pending further application and order of this Court, after notice and opportunity for a hearing.  Coyote and Alerus shall only receive one satisfaction from the Transactions notwithstanding the entry of similar orders in the Sellers' bankruptcy cases.

13.     ITS shall pay to SSG Advisors, LLC and Chiron Financial Group, Inc. (collectively "**SSG**") the sum of $93,750 from the cash proceeds at the Closing from the Transactions in partial satisfaction of the fees and expenses owing to SSG as authorized by prior order of this Court.  The Diverse Debtors shall pay to SSG the sum of $156,250 from the cash proceeds at the Closing from the Transactions in partial satisfaction of the fees and expenses owing to SSG as authorized by prior order of this Court.  Potential further payments may be made to SSG from the sale proceeds of the Transactions pursuant to prior order of the Court.

16

### No Successor or Transferee Liability

~~13.~~14.  The Purchaser shall not be deemed, as a result of any action taken in connection with the APA, the consummation of the Transactions contemplated by the APA, or the transfer or operation of the Acquired Assets to (a) be a legal successor, or otherwise be deemed a successor to the Sellers (other than with respect to any obligations as an assignee under the Purchased Contracts arising after the Closing); (b) have, *de facto* or otherwise, merged with or into the Sellers; or (c) be an alter ego or a mere continuation or substantial continuation of the Sellers or the enterprise(s) of the Sellers, including, without limitation, within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act (**"COBRA"**), WARN (defined below), CERCLA (defined below), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act, 29 U.S.C. § 151, *et seq.*, environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, any liabilities, debts or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Sellers' liability under such law, rule or regulation or doctrine.

~~14.~~15.  Other than as expressly set forth in the APA and this Order with respect to Permitted Encumbrances and Assumed Liabilities, the Purchaser shall not have any responsibility for (a) any liability or other obligation of the Debtors or related to the Acquired

17

Assets or (b) any Claims against the Debtors or any of their predecessors or affiliates.  The

Purchaser shall have no liability whatsoever with respect to the Sellers' (or their predecessors' or

affiliates') respective businesses or operations or any of the Sellers' (or their predecessors' or

affiliates') obligations (as described herein, "**Successor or Transferee Liability**") based, in

whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind

or character, or based upon any theory of antitrust, environmental, successor or transferee

liability, *de facto* merger or substantial continuity, labor and employment or products liability,

whether known or unknown as of the Closing, now existing or hereafter arising, asserted or

unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any

taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the

operation of the Acquired Assets prior to the Closing.  The Purchaser shall have no liability or

obligation under the WARN Act (29 U.S.C. §§ 2101 et seq.) ("**WARN**") or the Comprehensive

Environmental Response Compensation and Liability Act ("**CERCLA**"), or any foreign, federal,

state or local labor, employment, or environmental law whether of similar import or otherwise by

virtue of the Purchaser's purchase of the Acquired Assets or assumption of the Assumed

Liabilities by the Purchaser.

### Good Faith; Arms' Length Sale

~~15.~~16.  The APA has been negotiated and executed, and the Transactions contemplated

by the APA are and have been undertaken, by Sellers, the Purchaser and their respective

representatives at arms' length, without collusion and in "good faith," as that term is used in

section 363(m) of the Bankruptcy Code.  Accordingly, the reversal or modification on appeal of

the authorization provided herein to consummate the sale shall not affect the validity of the

Transactions (including the assumption and assignment of the Purchased Contracts), unless such

authorization and consummation of the sale are duly and properly stayed pending such appeal.

18

The Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, are entitled to the full protections of section 363(m) of the Bankruptcy Code.

16.17.  None of the Sellers or the Purchaser has engaged in any conduct that would cause or permit the APA or the Transactions to be avoided, or damages or costs, to be imposed, under section 363(n) of the Bankruptcy Code.  The consideration provided by the Purchaser for the Acquired Assets under the APA is fair and reasonable, and the Transactions may not be avoided under section 363(n) of the Bankruptcy Code.

## Assumption and Assignment of Purchased Contracts

17.18.  Pursuant to sections 105(a) and 365 of the Bankruptcy Code, the Diverse Debtors are authorized and directed to assume and assign to the Purchaser each of the Purchased Contracts upon the Closing of the Transactions, free and clear of all Liens (other than the Permitted Encumbrances and the Assumed Liabilities).   The payment of the Cure Costs by the Purchaser under the APA and this Order (a) cures all monetary defaults existing thereunder as of the Closing Date; (b) compensates the applicable non-Debtor counterparties for any actual pecuniary loss resulting from such default; and (c) together with the assumption of the Purchased Contracts by the Diverse Debtors and the assignment of the Purchased Contracts to the Purchaser, constitutes adequate assurance of future performance thereof.

18.19.  To the extent that any counterparty to a Purchased Contract did not timely file a Contract Objection by the Contract Objection deadline, such counterparty is deemed to have consented to (i) the assumption and assignment of Purchased Contracts pursuant to the terms of this Order; and (ii) the proposed Cure Cost set forth on the Contract Notice.

19.20.  Any provision in any Purchased Contract that prohibits or conditions the assignment of such Purchased Contract or allows the non-Debtor counterparty to such Purchased Contract to impose any penalty, fee, rent increase, profit sharing arrangement or other condition

19

on renewal or extension, or to modify any term or condition upon the assignment of such Purchased Contract, constitutes an unenforceable anti-assignment provision that is void and of no force and effect in connection with the Transactions.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Diverse Debtors and assignment to the Purchaser of the Purchased Contracts have been satisfied.  Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Diverse Debtors under the Purchased Contracts, and such Purchased Contracts shall remain in full force and effect for the benefit of the Purchaser.

20.21.  Upon the Closing, the Purchaser shall be deemed to be substituted for the Diverse Debtors as a party to the applicable Purchased Contracts, and the Diverse Debtors and their estates shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Purchased Contracts occurring after such assignment.

21.22.  Each non-Debtor counterparty to a Purchased Contract is forever barred, estopped, and permanently enjoined from asserting against the Diverse Debtors or the Purchaser or their respective property (including, without limitation, the Acquired Assets) in connection with this transaction (i) any assignment fee, acceleration, default, breach or claim or pecuniary loss, or condition to assignment existing, arising or accruing as of the Closing Date or arising by reason of the Closing, including any breach related to or arising out of change-in-control in such Purchased Contracts, or any purported written or oral modification to the Purchased Contracts; or (ii) any claim, counterclaim, defense, breach, default, condition, setoff or other claim asserted or capable of being asserted against the Diverse Debtors existing as of the Closing Date or arising by reason of the Closing, except for the Permitted Encumbrances and the Assumed Liabilities.

22.23.  Other than the Purchased Contracts or as otherwise expressly set forth in the APA, the Purchaser assumed none of the Sellers' other contracts or leases and shall have no liability whatsoever thereunder.

23.24.  Nothing in the Motion or this Order shall be deemed or construed as a waiver of any claims or causes of action that the Diverse Debtors or the Purchaser have or may have against a non-Debtor counterparty to any Purchased Contract, whether or not such claims arise under, are related to the assumption of or are independent of the Purchased Contracts.

**Other Provisions**

24.25.  The requirements set forth in Bankruptcy Rules 6003(b), 6004 and 6006 have been satisfied or otherwise deemed waived.

25.26.  The Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to give any notice permitted by the APA or to enforce any of its remedies under the APA or any other sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence; provided however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

26.27.  The provisions of this Order and the APA are non-severable and mutually dependent.

27.28.  The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court; provided that any such modification, amendment or supplement does not have a material adverse effect on the Diverse Debtors' estates.

28.29.  The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments

21

thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Diverse Debtors are a party or which has been assigned by the Diverse Debtors to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Transactions.  This Court retains jurisdiction to compel delivery of the Acquired Assets, to protect the Purchaser and its assets, including the Acquired Assets, against any Liens and Successor and Transferee Liability and to enter orders, as appropriate, pursuant to sections 105(a), 363 or 365 (or other applicable provisions) of the Bankruptcy Code necessary to transfer the Acquired Assets and the Purchased Contracts to the Purchaser.

29.30.  As provided by Bankruptcy Rules 7062 and 9014, the terms and conditions of this Order shall be effective immediately upon entry and shall not be subject to the stay provisions contained in Bankruptcy Rules 6004(h) and 6006(d) or any similar rule that would delay the effectiveness of this Order.  Time is of the essence in closing the sale and the Diverse Debtors and Purchaser intend to close the sale and consummate the Transactions as soon as possible. Therefore, any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay or risk their appeal being foreclosed as moot.

30.31.  This Order and the APA shall be binding in all respects upon all creditors of (whether known or unknown), and holders of equity interests in, any Seller, any holders of Liens in, against or on all or any portion of the Acquired Assets, all non-Debtor counterparties to the Purchased Contracts, all successors and assigns of the Purchaser, the Sellers and their affiliates and subsidiaries and any subsequent trustee appointed in these chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code, and shall not be subject to rejection. Nothing contained in any chapter 11 plan confirmed in these chapter 11 cases, any order confirming any such chapter 11 plan or any order approving wind-down or dismissal of these

chapter 11 cases or any subsequent chapter 7 cases shall conflict with or derogate from the provisions of the APA or this Order, and to the extent of any conflict or derogation between this Order or the APA and such future plan or order, the terms of this Order and the APA shall control.

31.32.  To the extent any provisions of this Order conflict with, or are otherwise inconsistent with, the terms and conditions of the APA or the Bidding Procedures Order, this Order shall govern and control.

Dated:  _____, 2016
         Houston, Texas

_____
UNITED STATES BANKRUPTCY JUDGE

23

<u>**EXHIBIT A**</u>

**Asset Purchase Agreement**

NAI-1500763202v2